HARRY P. MERRILL ET AL. v. JAMES E. DENTON AND
EDWARD C. RECOR.

*Chattel mortgages—Delivery—Neglect to file—Replevin—Demand—*
*Bond—Evidence.*

1. A chattel mortgage executed by a debtor to secure a creditor, and
   retained in the debtor's possession for a time, when it is filed
   and notice given to the creditor, who accepts the security, but
   who had no prior knowledge or notice of its execution, or agree-
   ment with the debtor therefor, has no *legal* existence until
   delivery, which takes place on such acceptance.

2. Where a vendor, with knowledge of the existence of a chattel
   mortgage covering the vendee's entire stock of goods, and all
   accessions thereto, consents that goods sold to the vendee both
   before and after such knowledge shall be considered as com-
   mission goods, and afterwards settles with the vendee and
   accepts his notes for the purchase price, upon which he brings
   suit and attaches the vendee's stock of goods, he takes the
   same subject to the lien of said mortgage.

3. Replevin lies at once, and without a demand, in favor of a
   mortgagee against an officer who attaches the mortgaged prop-
   erty in defiance of the mortgage, which he claims to be void as
   against the attaching creditor.[1]

4. Where a mortgagee replevied the mortgaged property from the
   sheriff, who had seized it at the suit of an attaching creditor
   of the mortgagor, and gave the required bond to the coroner,
   and received the property, and the mortgage is not claimed to
   be in *fact* fraudulent, or a *void* incumbrance *after* its filing,
   but the issue is as to its covering goods sold to the mortgagor
   between the date of the mortgage and its filing, evidence of
   what disposition the mortgagee has made of the property is
   inadmissible.

Error to Alpena.    (Emerick, J.)    Argued January 25,
1889.    Decided February 1, 1889

Replevin.    Plaintiffs bring    error.    Reversed.    The
facts are stated in the opinion.

[1] See *Williams v. Raper*, 67 Mich. 427 (head-note 5).

*Turnbull & Dafoe,* for appellants.

*R. J. Kelley,* for defendants.

MORSE, J. In the summer of 1886 John M. Blakely was carrying on the grocery business in the city of Alpena. On June 10 in that year he was indebted to plaintiffs, Merrill, Fifield & Co., of Bay City, Mich., in the sum of at least $2,579, and he executed on that day a chattel mortgage to them for that amount. This mortgage was for the sum above mentioned, and embraced all the property in his business, except an iron safe, and contained a clause that the mortgage should cover also all goods and merchandise thereafter purchased for, or made a part of, or entering into, the business and stock in trade of the said Blakely, whether delivered at said place of business or elsewhere, or in process of delivery. The mortgage also embraced all book-accounts and credits, —in fact, all the property of the said Blakely. This mortgage was executed without the knowledge of the plaintiffs. Blakely kept it in his safe until June 18, 1886, when he put it on file at 4:40 o'clock, P. M., and telegraphed the plaintiffs that he had filed a mortgage for their benefit. This was the first notice they had of its existence. They accepted it without inquiry as to its date or amount.

Previous to June 18, 1886, one Robinson, acting as the agent of the defendant Recor, contracted to sell Blakely a quantity of oats and corn. He commenced delivering the same on the morning of the 18th, and closed the delivery on the 19th, of June. He claimed that oats to the amount of $344.88 were delivered on the 18th. He admits that, shortly after the delivery of the oats and corn, Blakely told him that he had given the mortgage to plaintiffs, and that he did not take the goods away when he learned this, because Blakely promised to pay

for them; admits that Blakely told him that he wanted the bill of the goods made out to "J. M. Blakely, Agent, Commission," and that he made it so on this request; but denies that they were left on commission, or that Blakely told him the best plan would be to leave them on commission. He sold Blakely, after he knew of the mortgage, $115 worth of flour, upon which Blakely afterwards paid $65.55. The flour was also billed on commission.

Blakely testified that at noon on June 18, while the oats were being delivered, he told Robinson that he did not propose to be unfair with him, and have him put goods in the shop, and not know how things were; that there was a chattel mortgage on the shop to Merrill, Fifield & Co. for $2,500, and that if he did not want to put in the rest of the grain not to do it; that he might put it in as commission goods, and leave it in that way, and he (Blakely) would pay for it as fast as he sold it. Robinson said he would put it in anyway, and billed it to him on commission. Blakely paid him some money from time to time until July 31, 1886, when Robinson wanted to settle up for the grain, and take Blakely's notes for the same. Blakely wanted the grain left, as it was, on commission, but Robinson said he was going away, and wanted to close the matter up. Blakely said if it went into the stock it would be covered by plaintiffs" mortgage, but Robinson insisted upon his signing the notes he had drawn up, and finally Blakely did so. The defendant Recor made these notes the basis of an attachment suit, and the sheriff, Denton, under the writ, levied upon the goods of Blakely in the store in October, 1886. May 3, 1887, Recor recovered judgment in this attachment suit for the sum of $371.38.

October 26, 1886, the plaintiffs replevied the goods attached, Blakely making the affidavit, being directed to

do so by the plaintiffs, and the goods were delivered to him by the sheriff. He claims to have received them as their agent. He remained in the store, selling goods and carrying on business, until January 27, 1887, when plaintiffs took possession, and sold out the stock under their mortgage. Upon the trial of this replevin suit,—the one now before us,—the jury returned a verdict in favor of the defendants, and found their lien to be for the sum of $384.17, for which amount they had judgment. The plaintiffs bring the case here for review on writ of error.

The court charged the jury that the mortgage of plaintiffs was void as against the defendants, as far as the delivery of goods between June 10 and June 19 was concerned; that the defendants were entitled to the value of the goods sold and delivered before the 19th, unless Robinson, by his acts, had consented that the goods should go in under the mortgage.

The plaintiffs claim that this instruction was erroneous; that in law the mortgage was not made until June 18, when it was put on record, and the plaintiffs notified of its existence; that it had no legal existence until it was delivered to plaintiffs, which was not until that day. The defendants answer that when the plaintiffs accepted this mortgage they received it as of the day it was made; that the acceptance related back to June 10.

We think the plaintiffs are right in this contention. The evidence shows that the plaintiffs knew nothing of the making of this mortgage until they received the telegram that it had been filed, nor did they have any arrangement that such a mortgage should be made and subsequently filed. They received the mortgage in good faith for a debt that was valid and subsisting at the time to the full amount of the mortgage. This is unlike the cases where the mortgagee takes the mortgage and keeps it off the record, or where he knows it has been made,

and agrees with the mortgagor that it may not be filed until some emergency arises. In such cases there is a fraud upon the persons who sell goods to the mortgagor between the making of the mortgage and its filing, and the mortgagee is a party to the fraud. In this case, under all the authorities, the mortgage was not delivered until June 18, and it could have no force until it was delivered. The plaintiffs could not, by accepting it on the 18th, in the absence of any fraud on their part, be held to receive it as of the 10th,—its date.

In *Root v. Harl*, 62 Mich. 420 (29 N. W. Rep. 29), Ramsey obtained his mortgage April 13, 1883, and he did not record it until July 16, 1883. It was held that his mortgage was void as far as debts were concerned contracted by the mortgagor between those dates. But here the mortgage was not obtained by plaintiffs until it was filed, as they had no notice of it until then. It could have no life until delivered to and accepted by them.

The plaintiffs' attorneys requested the court to instruct the jury as follows:

"If the jury find that after Robinson, defendant Recor's agent, knew of the plaintiffs' mortgage, he consented that the goods purchased of defendant Recor by Blakely should be considered commission goods, and afterwards, on July 31, 1886, settled up with Blakely, and took notes for the same, then this mortgage of plaintiffs is valid and binding as against defendants."

This request should have been given as asked. The testimony was undisputed that the grain was billed to Blakely on commission of date June 19, 1886, being headed as follows:

"St. Clair, Mich., June 19, 1886.
"Mr. J. M. Blakely, Agt. on Commission.
"Bought of E. C. Recor."

Before the settlement of July 31, 1886, the following bill was rendered by Robinson to Blakely:

"Mr. J. M. BLAKELY,• Agt., Goods on Commission,
     "Bought of E. C. Recor.

| | | |
|---|---|---|
| July 7, to balance | $284 | 18 |
| " 24, to 15 bbls. flour, 4.60 | 69 | 00 |
| " 26, to 10 bbls. flour, 4.60 | 46 | 00 |
| | $399 | 18 |
| July 24, by cash | 50 | 00 |
| | $349 | 18" |

On the back of this bill, in the handwriting of Robinson, was the following indorsement:

"Rec'd of J. M. Blakely, one note, $100.00 for 10 days; one note, $100.00, for 20 days; one note, $149.18, for 30 days."

It is also admitted by Robinson that at the time he made this settlement he knew of this mortgage, and that by its terms it would cover this grain and flour, if sold by Blakely and put in the business. Here was certainly the strongest kind of testimony supporting plaintiffs' claim, which was only explained on the part of the defendants by the testimony of Robinson that he made the bills in this way because Blakely wanted him to do so. It was also a conceded fact that the settlement was made July 31, 1886, for the flour sold after the mortgage was known to Robinson, as well as for the oats and corn, and that the attachment suit was brought on these notes, after they became due, and no steps taken to recover the property before suit brought.

The court refused to charge as requested, and he did not cover it in his general charge. The instruction in this respect was that the jury must find that the agent of Recor, knowing of the existence of this mortgage, and its being on file, consented in fact that these goods that he had already delivered, as well as those that he should

afterwards deliver, should go into this stock, and be sub-
ject to the lien of the mortgage, in order to entitle the
plaintiffs to a verdict.

"The mere fact alone that he made out bills at the
request of Blakely, if you find that fact, that these goods
which he represented upon the bills as commission goods,
would not constitute such consent. It is a question of
fact whether he consented that these goods should go
into the stock, and be covered by the lien of this mort-
gage."

This instruction did not meet the case. The settlement
and the taking of the notes by this charge of the court
cuts no figure in the transaction, and the jury might
well have understood from the language of the court and
the refusal to give plaintiffs' request that they must find
that Robinson did something more than was stated in
said request, and made some positive declaration of con-
sent that the goods might go in under the mortgage.
The undisputed testimony and the acts of Robinson, which
are not questioned in the evidence, certainly raise a pre-
sumption that he did consent to the grain going into the
stock when he knew it would thereby, by the terms of
the mortgage, be covered by it, and it needed no consent
in words from him in aid of such acts. The request was
good law, as applied to the facts of the case, and the
plaintiffs were entitled to it.

The court made another serious mistake on the question
of a demand of the goods, taken under the attachment
writ, before the replevin suit was brought. The jury
were instructed that when the attachment was sued out
by Mr. Recor, the sheriff, defendant Denton, had a per-
fect right under the writ, as against Blakely and the
plaintiffs, to take possession of the stock of goods, and
to continue such possession until he had a reasonable
time to make the inventory and appraisal of the same,
"*no matter whether this mortgage was good or bad, or*

*whether* he proposed to recognize it, or *whether he did not;*" that a demand was necessary in this case, unless the jury were satisfied from the facts and circumstances of the case, "that a demand would have been useless, would not have been complied with, as if the defendant Denton said or did something that convinced Blakely, and which was sufficient to convince Blakely, that no demand would have been complied with for the goods;" and this must have taken place after the inventory was made, "because they would have no right to demand the possession of these goods before an inventory and appraisal were completed."

This is not the law. If the mortgage of the plaintiffs was a valid one, the sheriff, under this attachment writ, had no right to levy on this property, treating the mortgage as void, and in defiance of it. He could seize the property subject to said mortgage, and hold it for the purposes of inventory and appraisal until he ascertained that there was nothing over and above the value of the mortgage debt; but when he takes the key of a store, and takes possession of goods upon which there is a mortgage on file in the proper office, and he is informed that the mortgage is then a subsisting and valid lien upon the goods, and, as there was testimony tending to show in this case, the sheriff answers that he "don't care for the mortgage," and does not recognize it or intend to levy subject to it, the mortgagee is not bound to wait until the sheriff has completed an inventory and appraisal of the goods, a period of several days in many cases. The sheriff is a wrong-doer in the beginning. He has no right to take possession of the goods, and hold them for a moment, in antagonism to the mortgage. He can be sued at once in trespass, and so can replevin be maintained without demand, because the possession of the sheriff is by his own showing not a lawful one.

On the cross-examination of the witness Blakely it was shown by him, against plaintiffs' objection, that after the writ of replevin was executed he continued in the possession of the goods—which were delivered to him by the coroner, who served the writ—for two or three months, and carried on business, buying and selling goods in the usual course of trade. The evidence was admitted on the statement of the counsel for defendants that they had a right to show a special interest in the property, and also any misappropriation of the same, or anything done to the goods to their prejudice. The admission of this testimony was erroneous. The plaintiffs having given bond for the property, and received it, what they did with it afterwards was of no concern to defendants. There was no claim that this mortgage was in fact fraudulent, or that it was a void incumbrance after the date of its filing, except as a matter of law in reference to the value of goods sold to Blakely by defendants between June 10 and June 19, 1886. The issue, therefore, was confined to the state of things existing before and at the date of the commencement of this suit. *Cary v. Hewitt,* 26 Mich. 228, 232.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.