### HARNAU *v.* HAIGHT.

1. FRAUDULENT CONVEYANCES—DEBTOR AND CREDITOR—PREFERRING CREDITOR.

In this State, laying aside the Federal bankruptcy act, a debtor has the right to prefer one creditor to another, to use his property for the payment of one debt or of many debts to the exclusion of one or many creditors.

2. SAME—TRANSFER OF PROPERTY FOR VALUE—JUDGMENT CREDITOR'S SUIT.

The transfer by a debtor of his property to a corporation, and the use by him of the preferred stock received in part payment therefor to discharge his valid indebtedness was not a fraudulent conveyance voidable at the suit of a judgment creditor whose judgment remained unpaid.

3. SAME—CORPORATIONS—RECEIVERS.

Nor was the appointment of a receiver of the corporation justified upon the record.

4. SAME—TRANSFER OF STOCK WITHOUT CONSIDERATION VOID AS TO CREDITORS.

Where a debtor transferred all of his property to a corpo-

ration, receiving stock therefor, and, after paying certain of his creditors with preferred stock, still retained $48,000 of common stock which he voluntarily transferred to his wife without consideration, such transfer was void as to his remaining creditors.

5. SAME—VOLUNTARY PAYMENT OF DEBT OF ANOTHER VOID AS TO CREDITORS.

Where said stock was assigned to the trustee of a trust mortgage given by the corporation to secure the payment of its debts, for which neither the debtor or his wife were in any way liable, said assignment was void as to his creditors; the trustee and parties secured by the mortgage having knowledge of the facts and being parties to the suit.

6. SAME—EQUITY—JURISDICTION—PERSONAL PROPERTY—STOCK.

While courts of equity are not inclined to assume jurisdiction where the question of fraudulent transfer of personal property is involved, yet where the court already has jurisdiction of the matter, and the property involved is not tangible personal property which the sheriff could take into his possession on an execution, nor upon which he could make a levy because said stock does not stand in the debtor's name, the court will retain jurisdiction for the purpose of finally disposing of the matter by setting aside the transfer of said stock and placing it in the name of the debtor, after which an *alias* execution may be issued upon plaintiff's judgment and levied upon said stock in accordance with the statute.

Appeal from Muskegon; Lamb (Fred S.), J., presiding. Submitted January 9, 1920. (Docket No. 49.) Decided April 10, 1920. Rehearing denied June 17, 1920.

Bill by Peter Harnau against Louis P. Haight and others in the nature of a judgment creditor's bill, a bill in aid of execution and a bill for a discovery. From a decree for plaintiff, defendants appeal. Reversed, and decree entered.

*Turner & Turner,* for plaintiff.

*Carpenter & Jackson,* for defendants.

The material facts in this case are not seriously in dispute. Counsel do not agree, however, as to the inferences to be drawn from them. Defendant Louis P. Haight for a number of years conducted a business of which he was sole proprietor under the name of "Muskegon Knitting Mills." The business grew and the amount of property used in the business increased. In addition to the property used in the business Mr. Haight had farm lands and other property. At times the business was prosperous and at other times it was operated at a loss. In 1914 Mr. Haight was considerably involved. He owed the Old National Bank of Grand Rapids, his father, the defendant A. S. Haight, his two brothers, the defendants F. E. Haight and C. S. Haight, and defendant C. B. Stowell, a friend, for borrowed money, and had in addition considerable commercial indebtedness. On October 27, 1913, the plaintiff suffered a personal injury due to the negligence of Mr. Haight. He brought a suit in the circuit court of Muskegon county and recovered a judgment of $3,000. Mr. Haight gave the usual bond and brought the case to this court where it was reversed (*Harnau* v. *Haight,* 189 Mich. 600). Upon the second trial plaintiff again recovered judgment which was not appealed from. In the fall of 1914, Mr. Haight consulted defendant Clay H. Hollister, president of the Old National Bank of Grand Rapids, with reference to his financial matters. He had at that time practically decided to go into bankruptcy. Mr. Hollister advised against such move and it was finally arranged that a corporation should be organized to take over Mr. Haight's business and property. The plan contemplated that Mr. Haight's father, brothers and Mr. Stowell should accept preferred stock of the corporation for their indebtedness, and that the bank should advance further credit to Mr. Haight, being secured for such advances and the amount then due

by a trust mortgage to Mr. Hollister, as trustee, for its benefit and the benefit of Mr. Haight's father and brothers who agreed to loan the company certain additional sums of money, the mortgage to cover the assets of the company. The plan was carried out and on November 28, 1914, the defendant corporation Muskegon Knitting Mills was organized with a capital stock of $100,000, divided into 1,000 shares of the par value of $100 each; $52,000 of preferred stock was provided for in the articles of association and it was subscribed for by Mr. Haight. Ten thousand dollars of this preferred stock was assigned to each of defendants A. S. Haight, F. E. Haight and C. S. Haight, and the balance, $22,000, was assigned to defendant Stowell in payment of their indebtedness. The common stock of $48,000 was subscribed for as follows: 48 shares to defendant Louis P. Haight, 430 to defendant Grace C. Haight, wife of Louis P. Haight, 1 to defendant Hollister, and 1 to defendant Foote. The shares issued to Hollister and Foote were qualifying shares and both have been surrendered. Some of the common stock issued to Louis P. Haight was afterwards transferred to his wife as trustee for their minor children and upon the trial Louis P. Haight claimed to be the owner of but one share of the common stock. After the organization of the corporation, Mr. Haight transferred to it all his property and business. The trust mortgage to Hollister as trustee was afterwards executed.

Plaintiff's judgment upon the second trial was for $3,956.47. An execution was issued upon it. Levy was made upon certain transferred real estate but the execution was returned wholly unsatisfied. Later this bill was filed. It partakes of the nature of a creditor's bill, a bill in aid of execution and a bill for discovery. By it plaintiff seeks to subject the assets of the Muskegon Knitting Mills to the payment of his

judgment and to avoid the transfer to it of Mr. Haight's property. The trial judge who heard the case reached the conclusion that the transfer of Mr. Haight's property operated as a fraud upon plaintiff's rights and that a receiver should be appointed to take over the property of the corporation, to control and manage it as a going concern,—

"* * * and to make use of the receipts and assets thereof for the following purposes and in the order given:

"1. To take care of the running expenses of the plant.

"2. To pay all legitimate expenses of the receivership.

"3. To pay all claims and accounts secured and unsecured which have accrued subsequently to the incorporation of the Muskegon Knitting Mills, and now held by persons or parties who are not now, nor ever have been holders of any of the capital stock of the Muskegon Knitting Mills, either common or preferred and who are strangers to this suit.

"4. To pay the claims of the plaintiff in this case with interest and costs of suit to be taxed."

Defendants appeal from this decree.

FELLOWS, J. (*after stating the facts*). The case differs materially from that of *Grenell* v. *Detroit Gas Co.*, 112 Mich. 70, which was much relied upon by the chancellor. In that case the Michigan Gas Company, against which complainant held judgment, transferred all its property to the defendant, which issued its shares of stock to the stockholders of the old company. These shares were not used to pay the debts of the old company or any of them, and the corporation itself (Michigan Gas Company) received nothing for the transfer. In the instant case Mr. Haight transferred his property to the corporation for the shares of stock of the company. He was heavily in debt. Some of these debts the corporation assumed. In ad-

dition to the assumption of certain debts, he was paid for his property in stock of the corporation. The preferred stock of the corporation was issued to Mr. Haight and was used by him to pay valid indebtedness. There is no question but that he owed his father, brothers and Mr. Stowell the amount he claims he did, and it is likewise beyond question that he used the preferred stock issued to him to discharge that liability. Under these circumstances the case cannot be distinguished from *Scripps* v. *Crawford,* 123 Mich. 173. In that case the trial judge made substantially the same decree as in this case, appointed a receiver to conduct the business of the corporation for the purpose of working off the debt of the judgment creditor; the defendant in that case had used the shares of the corporation to pay and secure certain of his individual creditors in preference to the complainant. In that case the court said, in reversing the decree of the trial court:

"The Union Trust Company accepted an assignment of the stock as collateral. It had a right to ask security and accept it, although the necessary and obvious consequences would be the delay of other creditors, if not their defeat. It might have done the same by taking a mortgage of the property before it was conveyed to the corporation, and other creditors could not have prevented it, or set aside the transaction as a fraud, so long as there was no collusive attempt to aid Crawford in injuring others. It is not the province of a court to prefer creditors. That is a privilege of the debtor."

And this but followed the settled law of the State, that, laying aside the Federal bankruptcy act, not there nor here involved, a debtor has the right to prefer one creditor to another, to use his property for the payment of one debt or of many debts to the exclusion of one or many creditors. *Belding Savings*

*Bank* v. *Moore,* 118 Mich. 150, and authorities there cited; *Gore* v. *Ray,* 73 Mich. 385; *Webber* v. *Webber,* 109 Mich. 147; *Kock* v. *Bostwick,* 113 Mich. 302.

Unless we overrule the *Scripps Case* and its sustaining authorities, we are bound to hold that the transfer by Mr. Haight of his property to the corporation, and the use by him of the preferred stock received in part payment therefor to discharge his valid indebtedness was not a fraudulent conveyance voidable at the suit of a judgment creditor whose judgment remained unpaid. We must likewise hold that the appointment of a receiver of the corporation was not justified. We have no disposition to question the holding in the *Scripps Case.* It was correctly decided. It was followed and applied in *Plaut* v. *Billings-Drew Co.,* 127 Mich. 11.

But we do not think the plaintiff is without remedy in this proceeding. Mr. Haight transferred all his property to the corporation, not only that which was necessary for corporate purposes, but a considerable amount not needed or useful for the purposes for which the corporation was organized. He furnished all the assets of the corporation and was entitled to all the stock of the corporation in payment therefor. As we have shown he took and used $52,000 of preferred stock to pay certain of his creditors and the corporation assumed payment of certain other debts. But the legal title to the $48,000 of common stock he diverted from himself and now has but one share which stands in his name. We are satisfied that the transfer to his wife of the common stock was without consideration and purely voluntary. By this transaction he has divested himself of the title to his tangible property, and the $48,000 of common stock received as part payment therefor has been voluntarily transferred to his wife. The result of these manipulations is to leave him without property upon which

an execution could be levied—to make him execution proof. We are convinced that this was what he designed to do and that the purpose was to prevent plaintiff from realizing on his claim. We do not overlook the fact that Mr. Haight some months before the organization of the corporation gave the usual stay bond on the first judgment. We must assume that he had some assurance from his attorney that there was reversible error in the proceedings or he would not have brought that case here. When the corporation was organized some months after the stay bond was given Mr. Haight so placed the common stock that in case of a reversal, and a judgment on a second trial, he would hold in his own name no property upon which a levy could be made. While Mr. Haight had the right to prefer one creditor over another and to use the stock received by him to pay *bona fide* creditors in preference to liquidating plaintiff's claim, he could not give his property to his wife without consideration to the detriment of those having valid claims against him.

We note from one of the exhibits in the record that the common stock has been assigned to the present trustee of the trust mortgage executed by the corporation. But neither Mr. nor Mrs. Haight was obligated in any way for the payment of any of the indebtedness secured by that instrument. The debts were the debts of the corporation either because originally contracted by it or because assumed. The trustee and parties secured by that mortgage all had notice of plaintiff's claim, none of them can claim or do claim that the transfer of the stock by Mrs. Haight to the trustee gave them the rights of a *bona fide* holder; they are all parties to this case and before the court. Before this stock may be used to secure the debt of another for which neither Mr. nor Mrs. Haight is liable it should be applied to the payment of Mr. Haight's valid debts.

We recognize that courts of equity are not inclined to assume jurisdiction where the question involved is one of fraudulent transfer of personal property. But under the peculiar facts of this case we think it should be exercised. The court has jurisdiction of the case and should retain it for the purpose of finally disposing of the claims of the parties. The property here involved is not tangible personal property which the sheriff could take into his possession on an execution, nor may he make a levy on any stock which does not stand in the name of Mr. Haight. *Feige* v. *Burt*, 118 Mich. 243. Under these circumstances we think the court should retain jurisdiction for the purpose of finally disposing of the matter.

The transfer of all the common stock is set aside and the stock will be returned to Mr. Haight and will be placed in the name of Louis P. Haight upon the books of the corporation. Upon that being done an *alias* execution may be issued upon plaintiff's judgment and levied upon such stock in accordance with the statute.

It follows from what has been said that the decree of the court below will be set aside and one here entered in accordance with this opinion. The plaintiff will recover costs of both courts against Louis P. Haight and Grace C. Haight. The other defendants will recover costs of both courts against the plaintiff.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.