GRAND RAPIDS TRUST CO. *v.* LUTES.

1. FRAUDULENT CONVEYANCES—PREFERRING CREDITOR.
    Debtor, though in failing financial circumstances, has right to pay one creditor in preference to others, and it is immaterial that effect is to hinder or defeat other creditors in collection of their debt, if transaction is honest and without intent to injure them.

On right of debtor as to parties preferred, see annotation in 36 L. R. A. 341 *et seq.*

2. Same—Assignments—Holder in Due Course.

Assignment of shares of stock by maker to pay promissory notes secured thereby was not in fraud of creditors, where holders of notes were holders in due course, assignment was fair consideration to pay honest debt, and transaction was free from fraud.

Appeal from Kent; Brown (William B.), J. Submitted April 21, 1932. (Docket No. 120, Calendar No. 36,445.) Decided June 6, 1932.

Judgment creditors' bill by Grand Rapids Trust Company, as receiver of the Peninsular Fire Insurance Company, a Michigan corporation, against Gleason V. Lutes and others. Hattie Besser and another intervened as parties plaintiff. Decree for plaintiff. Defendant Lange appeals. Reversed.

*Dayton W. Closser* and *Fred A. Lavery,* for plaintiff.

*Joslyn, Joslyn & Joslyn,* for intervener Alpena County Savings Bank.

*Wynn, Zinn & Freimuth,* for defendant Lange.

McDonald, J. The plaintiff, Grand Rapids Trust Company, as receiver of the Peninsular Fire Insurance Company, obtained a judgment in the Wayne circuit court against defendant Gleason V. Lutes, and caused execution to issue which was returned unsatisfied. This bill was then filed against Lutes and others for discovery, appointment of receiver, and for general judgment creditor relief. Hattie Besser and the Alpena County Savings Bank, also judgment creditors of Lutes, were permitted to intervene as parties plaintiff.

The bill charges that defendant Lutes is the owner of an interest in a partnership known as the Gen-

eral Association; that he is the owner of 311,500 shares of stock in the Gill & Fortune Lumber Company, Ltd., a Canadian corporation; that the defendants Lange, Ross, and Kinsler have conspired with Lutes to conceal his interest in that company; that they were claiming an assignment from Lutes of the certificate for 185,600 shares of the stock which the plaintiff charges was made to hinder and defraud his other creditors. Ross, Kinsler, and Lange were the only defendants represented at the hearing, and the contested issue was whether the assignment was fraudulent as to creditors. The trial court held that it was and entered a decree impounding the stock for their benefit. Ross and Kinsler assigned their interests to Lange and he alone is prosecuting this appeal.

In the history of the stock certificate in question, it appears that in June, 1923, one William Fitzpatrick sold to the defendant Gleason V. Lutes 285,600 shares of stock in the Gill & Fortune Lumber Company, Ltd., and received in part payment of the purchase price certain promissory notes, three of which of $5,000 each are involved in this controversy. The agreement for the sale was in writing, in which it was provided that 100,000 shares of the stock were to be delivered to Lutes and the remaining 185,600 shares held in escrow by the Great Lakes Finance Corporation for delivery when the notes were paid or satisfactorily indorsed.

Some time in July, 1923, Fitzpatrick, who had been associated with the defendants Ross, Kinsler, and Lange in the operation of a stone quarry in Cheboygan county, Michigan, purchased the quarry from them and gave in payment therefor the three Lutes notes indorsed in blank by himself. Both Fitzpatrick and Lutes represented to the defendants

that the notes were secured by the certificate of the 185,600 shares of stock held in escrow by the Great Lakes Finance Corporation. After verifying this representation by telephoning the Great Lakes Finance Corporation, defendant Ross, in the presence of Lutes and Fitzpatrick, made the following notation on the back of the notes:

"This note is secured by 185,600 shares of Gill & Fortune Lumber Company, Ltd., stock which is held in escrow for the guarantee of this payment."

The defendant Ross was president of the Conductors Protective Assurance Company of Detroit. His company had made a loan of $3,500 to the defendants and held a mortgage for that amount on the 100 acres of land included in the stone quarry property. This mortgage had been foreclosed at the time of the sale to Fitzpatrick. The deed to Fitzpatrick was given by the company. The notes given by Fitzpatrick in payment were taken by the defendants, who had an oral agreement with the company by which they were to collect the notes, pay the company $3,500, and retain the balance. The notes were not paid when due. They were given to defendants' attorney, Mr. Wynn, for collection. He was unable to sue Lutes because he could not get service on him. Negotiations with Mr. Foster, attorney for Lutes, resulted in getting the certificate of stock from the Great Lakes Finance Corporation and placing it in the custody of Mr. Wynn as escrow agent to be held by him as security for the payment of the notes. Subsequently, as no payment had been made by Lutes, an agreement was made with him by which the certificate of stock was assigned and delivered to the defendants in full payment of two of the notes which at that time, with accumulated interest,

amounted to approximately $13,000.  The notes were delivered to Mr. Foster.  After considerable delay the certificate was sent to the home office of the Gill & Fortune Lumber Company, Ltd., in Ontario, Canada, for registration, which was refused because a levy had been made on the stock by the Fidelity & Deposit Company of Maryland.  Defendants began mandamus proceedings to compel the transfer. When the suit at bar was commenced, further prosecution of the mandamus proceedings was enjoined.

It is this assignment that is involved in this suit. The trial court held it was made to hinder, delay, and defraud creditors, and therefore was void.  In reaching this conclusion, he found that the defendants were not creditors of Lutes; that they were not *bona fide* holders of the notes and had no interest in them.

The evidence does not sustain the court's findings. The notes were received by the defendants from Fitzpatrick in payment of the purchase price of the stone quarry, the title to which was in the Conductors Protective Assurance Company by virtue of the foreclosure of a mortgage securing a loan of $3,500.  The defendants had invested a large amount of money for personal property and equipment not covered by the mortgage but included in the sale. The company recognized their interest and was willing to take the amount of its mortgage from the proceeds of the sale and allow them to retain the balance.  The defendants made the sale with that understanding, and the agreement then made gave them a larger interest in the notes than the company had. That agreement has never been questioned, and, as far as appears by the record, is valid and binding on the parties.  The defendants had a real and substantial interest in the notes.  But in any event, when

the assignment of the certificate was made, the defendants were holders of the three negotiable instruments on which they could sue in their own names and which they could discharge on payment. Negotiable instruments law (2 Comp. Laws 1929, §§ 9258, 9300). They obtained the notes in good faith and for value. They were *bona fide* creditors of Lutes.

In the transaction with Lutes wherein defendants accepted an assignment of the certificate of stock in payment of two of the notes, we can discover no fraud. They had a lien on the stock long before they took the assignment. The notes had become due in 1925 and 1926. They took the assignment in 1930. They were crowding Lutes for payment. He gave them the certificate of stock as security, and later, when further pressed, made an absolute assignment in payment of two of the notes. They had a right to demand security and the right to take the assignment providing there was no collusion with Lutes to hinder, delay, or defraud other creditors. Though he was financially in failing circumstances, he had a right to pay them in preference to his other creditors. It matters not that the effect was to hinder or defeat other creditors in the collection of their debts. If the transaction was honest and without intent to injure them, it cannot be held to be fraudulent. In respect to such transactions the law is well settled.

"In general, when there is no fraud, and when the law does not forbid, a man may dispose of his own property according to his own ideas of propriety. If he is indebted by note to different parties, he may apply his property to the payment of one, and refuse to apply it to the payment of another, and he may lawfully discriminate in this way though in doing so he ignores the stronger moral claim resting upon

him. This results from the supreme dominion which is involved in the absolute ownership of property." *Northrup* v. *McGill,* 27 Mich. 234.

The following cases are also in point: *Scripps* v. *Crawford,* 123 Mich. 173; *Harnau* v. *Haight,* 209 Mich. 604; *Hartford Accident & Indemnity Co.* v. *Jirasek,* 254 Mich. 131.

In the instant case there is no evidence tending to show that the defendants were trying to aid Lutes in putting his property beyond the reach of creditors. They held an honest debt against him. They gave a fair consideration for the assignment. It did not render him insolvent. It was not fraudulent.

The decree of the trial court is reversed, with costs to the defendants.

CLARK, C. J., and POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.