SLEEPER v. WILSON.

1. Sheriffs and Constables—Sale of Goods Under Prior Chattel Mortgage Lien.

Chattel mortgagee may recover from sheriff for conversion of property, consisting of drilling tools and oil well casings, where record justifies finding of court that sheriff levied upon and sold them in total disregard of prior mortgage lien.

2. Same—Sale in Parcels—Inferences.

Sheriff's sale of property, consisting of drilling tools and oil well casings, in parcels instead of in bulk raises inference that it was made without regard to prior chattel mortgage lien that is not overcome by the fact that attaching creditor purchased entire property.

3. SAME—DEMAND—POSSESSION.

    Demand for possession by chattel mortgagee is not a condition precedent to action for conversion against sheriff where, after he had attached same and knew of mortgagee's interest, he claimed to hold possession "against everybody."

4. FRAUDULENT CONVEYANCES — CHATTEL MORTGAGES — PREFERRED CREDITORS.

    Chattel mortgage given bank for past-due indebtedness is not invalid because it had knowledge that debt owed another had not been paid as debtor may give security to one of his creditors to exclusion of others.

Appeal from Alcona; Dehnke (Herman), J. Submitted January 4, 1934. (Docket No. 59, Calendar No. 37,531.) Decided March 6, 1934.

Case by Albert E. Sleeper and others, doing business as Mikado Bank of Sleeper, Merrick & Company, against George Wilson for alleged conversion of drilling tools and oil well casings. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Alfred F. Myer,* for plaintiffs.

*O'Keefe & O'Keefe,* for defendant.

NORTH, J. This is an action at law for conversion, heard before the circuit judge without a jury. Plaintiffs had judgment and defendant appeals.

On May 22, 1929, plaintiffs took a chattel mortgage, in form a bill of sale, from C. Wilbur White to secure the payment of White's indebtedness to plaintiff bank of approximately $1,500. The mortgaged property consisted of certain drilling tools and a large quantity of iron pipes or casings used in drilling oil wells. Upon receiving the mortgage plaintiffs employed a man who lived across the road from where the mortgaged property was located to take possession of or at least to keep watch of the property. Shortly thereafter defendant, sheriff of Alcona county, incident to serving a writ of attach-

ment issued in a suit by Morley Brothers against C. Wilbur White, took possession of the chattel-mortgaged property. The sheriff retained possession from July 23, 1929, to December 20, 1930, at which time he sold the mortgaged property on execution issued in favor of Morley Brothers. Plaintiffs allege that defendant by seizing the property covered by their chattel mortgage, retaining possession of the same for more than 16 months, and finally disposing of it on execution sale, he knowing that the property was subject to the chattel mortgage, thereby unlawfully converted and disposed of said goods and chattels and thereby injured and destroyed plaintiffs' security.

As against plaintiffs' contention that the sheriff acted in disregard of their rights as mortgagees, the defendant asserts in his defense that he at all times recognized whatever rights plaintiffs had in the property, that he had it in mind that the property would have to be sold subject to plaintiffs' rights, and that at the execution sale he announced such sale was made subject to plaintiffs' claim, and in making his return of the sale he recited that the property was sold "subject to any right, title and interest which the Mikado Bank of Sleeper, Merrick & Co. may have, if any, in the property," and further that the bill of sale given by the sheriff was of "all of the right, title and interest of C. Wilbur White to the following goods and chattels, to wit." In behalf of defendant it is pointed out that at no time did plaintiffs demand possession of the chattel-mortgaged goods from the sheriff.

The opinion filed by the trial judge discloses that he gave careful consideration to the contentions of the respective parties. As indicative of the manner in which he arrived at his decision the following is quoted from his opinion:

"I consider first the documents in the case, and then the sheriff's testimony. The return to the writ recites that a levy was made upon the property as listed, and it (was) appraised without any mention of the chattel mortgage. The printed notice of the sale recites that defendant White's interest in the property has been levied on under the writ of execution, and will be sold, etc. The return of the sheriff to the execution shows that the property was sold in parcels, without stating the price received, either for the several parcels, or for the whole, except that a receipt is appended for an amount which is said to be the sum of the several parcel bids. As has been indicated, it recites that the sale was made 'subject to the rights of (plaintiffs), if any.'

"While the defendant testified generally that he, personally, did not undertake at any time to determine the dispute as to the validity of the mortgage, he stated that he had acted on the advice and instruction of the attorney for Morley Brothers, who is also his attorney in this suit, and in answer to specific questions testified as follows:

" 'I was told to go ahead and make the attachment of the stuff. * * *

" 'Q. You were instructed, were you, to disregard that mortgage?

" 'A. I don't know as any instructions, only to go ahead and make the attachment.

" 'Q. Did they tell you to pay no attention to the mortgage?

" 'A. Go ahead and attach the stuff and they would give a bond to protect me.

" 'Q. At the time you made the levy of the attachment, you did not make that subject to this mortgage?

" 'A. No sir.

" 'Q. At the time you posted the notice of execution sale, did you put in there the sale was made subject to the mortgage?

" 'A. No sir. * * *

" 'Q. From the time you levied this attachment July 23, 1929, up to December 20, 1930, when you sold it, your intention was to hold possession of that property regardless, and not taking into consideration the Mikado Bank's claim of right of possession?

" 'A. Hold it and selling it whenever the time came.

" 'Q. It was your contention and you did hold possession against everybody?

" 'A. Yes.' "

In view of the foregoing testimony, considered in connection with other aspects of the record to which we shall allude, we think the circuit judge' was wholly justified in finding that the defendant sheriff levied upon and sold the chattels mortgaged in total disregard of plaintiffs' mortgage lien.

It may also be noted that the act of the sheriff in offering the mortgaged property for sale in parcels, instead of in bulk, is decidedly persuasive that he was proceeding without regard to plaintiffs' rights as mortgagees, because sale in parcels would result in such dissemination of the mortgaged property as to materially impair, if not wholly destroy, the mortgage lien. This inference to be drawn from the sheriff's conduct is not entirely overcome by the fact that notwithstanding the sale was in parcels, all of the mortgaged property was purchased at the sheriff's sale by the Morley Brothers. In *Ganong* v. *Green,* 64 Mich. 488, 71 Mich. 1, it was held that a mortgagee might maintain trover against a sheriff who seized mortgaged chattels on attachment or execution against the mortgagor and sold them in parcels. See, also, *Worthington* v. *Hanna,* 23 Mich. 530.

After the sheriff attached the mortgaged property and prior to the date on which he sold the same, he had various talks with plaintiffs or plaintiffs' representative. The sheriff was fully advised of the plaintiffs' claim of chattel mortgage lien and he stated that "he couldn't do anything about" the mortgage, and he testified that it was his contention that he should and that he did hold possession of the property "against everybody." Under such circumstances demand for possession by plaintiffs was not a condition precedent to suit for conversion.

"The acts or statements of a party which clearly indicate that he will not deliver property to the person entitled to its possession, and that a demand therefor will be useless, amount to a waiver of such demand." *Galvin* v. *Galvin Brass & Iron Works* (syllabus), 81 Mich. 16.

See, also, *Merrill* v. *Denton,* 73 Mich. 628; *Malachiski* v. *Stellwagen,* 85 Mich. 41.

The following defense is asserted in appellant's brief:

"The mortgage was invalid as to Morley Brothers and the sheriff, \* \* \* because the chattel mortgage was taken after the plaintiff bank had knowledge that Morley Brothers' indebtedness had not been paid, and the mortgage was given to secure a past indebtedness due plaintiffs."

To sustain appellant's contention would be to hold that a debtor may not give security to one of his creditors to the exclusion of other creditors. Such is not the law. *Harnau* v. *Haight,* 209 Mich. 604; *Brown, Eager & Hull Co.* v. *Mosier,* 187 Mich. 55; *In re United Fuel & Supply Co.,* 250 Mich. 325.

Judgment is affirmed, with costs to appellees.

NELSON SHARPE, C. J., and POTTER, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.