Michigan Supreme Court
Lansing, Michigan 48909

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 18, 2003

CRAIG A. KLAPP,

Plaintiff-Appellant,

v

Nos. 119175, 119176

UNITED INSURANCE GROUP AGENCY, INC,

Defendant-Appellee.

---

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to appeal in this case to consider whether defendant breached the parties' written contract by refusing to pay plaintiff retirement renewal commissions on insurance policies that plaintiff sold on behalf of defendant while plaintiff was working for defendant. The trial court denied defendant's motion for summary disposition. It concluded that the contract was ambiguous and, thus, that its

interpretation raised a question of fact that must be decided by the jury, which could consider relevant extrinsic evidence. The jury found in favor of plaintiff. The Court of Appeals reversed, concluding that the contract unambiguously stated that an agent must be at least sixty-five years old and have worked at least ten years for defendant in order to qualify for retirement renewal commissions and, therefore, that the trial court erred in not granting defendant's motion for summary disposition. Because we agree with the trial court that the language of this contract is ambiguous and, thus, that its interpretation raises a question of fact for the jury to determine in light of relevant extrinsic evidence, we reverse the judgment of the Court of Appeals and remand this case to the Court of Appeals for consideration of defendant's other appellate issue and plaintiff's cross-appeal.[1]

## I. FACTS AND PROCEDURAL HISTORY

When plaintiff began working as an insurance agent for defendant in 1990, they entered into a contract, titled the "Agent's Agreement." Plaintiff permanently stopped working

---

[1] Specifically, on remand, the Court of Appeals shall consider defendant's alternative argument that the damages award was based on improper speculation about policy renewals, and plaintiff's cross-appeal, which challenged the trial court's dismissal of his claim for double damages and actual attorney fees under the sales representative commissions act. MCL 600.2961.

for defendant in 1997.[2]  Plaintiff brought this action, alleging that defendant failed to pay renewal commissions to which plaintiff was entitled pursuant to the vesting schedule in their contract that provided that an agent with seven years of service is entitled to the vesting of one hundred percent of his renewals.[3]  After discovery, defendant brought a motion for summary disposition pursuant to MCR 2.116(C)(10), contending that, in order for renewal commissions to be vested on the basis of retirement, one must be at least sixty-five years old and have worked for defendant for at least ten years.[4]  The trial court denied defendant's motion for summary disposition,[5] finding the contract to be ambiguous,[6]  and the

---

[2] In 1994, plaintiff stopped working for defendant for about six months.  When plaintiff returned to work for defendant, he was given credit for his prior work for defendant pursuant to the vesting schedule in their contract.

Plaintiff permanently stopped working for defendant in April of 1997.  However, defendant did not become aware of this until August of 1997.  Apparently, plaintiff did not inform defendant that he was not going to work for defendant any longer.  Once defendant noticed that plaintiff was not generating any new business, it sent plaintiff a letter declaring their contract terminated and stopped paying plaintiff renewal commissions.

[3] That defendant had accrued seven years of service as an agent with defendant is undisputed.

[4] That defendant was in his mid-forties when he stopped working for defendant is undisputed.

[5] However, the trial court did grant defendant's motion for summary disposition with regard to plaintiff's second
(continued...)

3

jury subsequently found in favor of plaintiff.[7]  The Court of Appeals then reversed, concluding that the contract unambiguously requires that an agent must be at least sixty-five years old and have worked at least ten years for defendant in order to qualify for retirement renewal commissions.[8]  We granted plaintiff's application for leave to appeal.[9]

[5](...continued)
count seeking double damages and attorney fees under the sales representative commissions act, MCL 600.2961, concluding that the SRCA does not apply to insurance sales agents.

[6] Although the trial court stated, in a written opinion, "it is an issue for the trier of fact to determine whether or not the language of the contract and actions by the parties render an ambiguous or unambiguous contract," the court's final instructions to the jurors told them to consider both the contract and the relevant extrinsic evidence, and then decide what the contract meant.  The court did not instruct the jurors to determine whether the contract was ambiguous.

[7] The jury awarded plaintiff $45,882 in renewal commissions for the period from August 1997 through the January 1999 trial, and one hundred percent of all future renewal commissions as they accrue.

[8] Unpublished opinion per curiam, issued February 9, 2001 (Docket Nos. 219299, 219330).  The Court of Appeals did not address defendant's alternative argument that the damages award was based on improper speculation about policy renewals or plaintiff's cross-appeal, which challenged the trial court's dismissal of his SRCA claim for double damages and attorney fees.

[9] We directed the parties to include among the issues to be briefed: "Where, as in the present case, a contract is drafted entirely by one party, without any bilateral negotiations, is extrinsic evidence admissible to clarify
(continued...)

## II.  STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition.  *Stanton v Battle Creek*, 466 Mich 611, 614; 647 NW2d 508 (2002).  Similarly, whether contract language is ambiguous is a question of law that we review de novo.  *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 563; 596 NW2d 915 (1999).  Finally, the proper interpretation of a contract is also a question of law that we review de novo. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

## III.  ANALYSIS

The Agent's Agreement at issue here provides in relevant part:

> 5.  Vested Commissions.  Commissions shall be vested in the following manner:
>
> (A) Death, disability, or retirement during term hereof.  Upon the death, disability, or retirement (as those terms shall be then defined in the Agent's Manual) of Agent at any time prior to the termination of this Agreement, Agent (or Agent's designated death beneficiary who shall be designated by Agent in writing; or in the absence of such written designation, Agent's estate) shall thereafter be entitled to receive one hundred percent (100%) of such renewal commissions then payable from premiums on Agent's policies in place, in such amounts as would otherwise have been payable to Agent, until the aggregate renewals

---

[9](...continued)
ambiguity in the contract or is any ambiguity in the contract simply to be construed against the drafter (without considering any extrinsic evidence)?"  467 Mich 867 (2002).

5

payable to Agent thereon shall equal less than Forty-One Dollars and Sixty-Seven Cents ($41.67) per month.  If upon the date of death, disability, or retirement, Agent shall have aggregated eight (8) or more years of service under this Agreement, his then vesting shall be determined in accordance with the normal vesting schedule.

(B) Vesting Schedule.  In the event of a termination of this Agreement for reasons of death, disability and retirement (as defined in the Agent's Manual), Agent as set forth below on the date of execution hereof shall be entitled to receive a percentage of renewal commissions then payable from premiums on Agent's policies in place, applicable to such amounts as would otherwise have been payable to Agent in accordance with the following vesting schedule:

| Agent's Years of Service | % of Renewals Vested |
|---|---|
| Less than 2 years | 0% |
| 2 years | 10% |
| 3 years | 30% |
| 4 years | 50% |
| 5 years | 70% |
| 6 years | 90% |
| 7 years | 100% |
| 8 years | 110% |
| 9 years | 120% |
| 10 years | 130% |
| 11 years | 140% |
| 12 years | 150% |

With regard to retirement, the Agent's Manual provides:

Retirement is understood to be disengagement from the insurance industry.  Vestment for retirement is age 65 or 10 years of service whichever is later.

When defendant moved for summary disposition, it argued that plaintiff was not entitled to renewal commissions because, although plaintiff had disengaged from the insurance

6

industry, he was not at least sixty-five years old and had not worked for defendant for at least ten years, whereas the contract unambiguously required an agent to satisfy all three of these requirements in order to be eligible for retirement renewal commissions. Defendant further argued that, because the contract was unambiguous, extrinsic evidence may not be considered in interpreting the contract.

Plaintiff, on the other hand, argued that the contract was ambiguous because the vesting schedule in § 5(B) of the Agent's Agreement conflicts with the sixty-five years of age and ten years of service requirements in the Agent's Manual. That is, under the vesting schedule, a percentage of renewal commissions were vested after two years of service, while, under the Agent's Manual's definition of retirement, which the Agent's Agreement incorporated, renewal commissions were not vested at all until an agent reached sixty-five years of age and had served as an agent with defendant for ten years. Plaintiff further argued that, because this contract was ambiguous, its interpretation was a question of fact that must be decided by the jury in light of relevant extrinsic evidence. As already noted, the trial court agreed with plaintiff that the contract was ambiguous and, thus, must be interpreted by the jury in light of relevant extrinsic

evidence.[10]

On appeal to the Court of Appeals, plaintiff argued that the early years of the vesting schedule (years two through nine) directly conflicted with the sixty-five years of age and ten years of service requirements, creating an ambiguity that the jury properly resolved against defendant. Defendant, on the other hand, argued that years two through nine of the vesting schedule should be ignored. The Court of Appeals, correctly recognizing that years two through nine of the vesting schedule had to be given some meaning, but disagreeing with plaintiff that they applied to agents who had retired, concluded that these years of the vesting schedule only applied to agents who died or had become disabled. Plaintiff filed a motion for rehearing, arguing that the Court of Appeals had overlooked § 5(A) of the Agent's Agreement, which provided that, regardless of age or years of service, an agent who died or became disabled while still employed was entitled

---

[10] As also noted above, n 6, the trial court did not clearly express this conclusion. In fact, when the trial court denied defendant's motion for summary disposition, the trial court actually stated that it was up to the jury to determine whether the contract was ambiguous. However, when it came time to instruct the jury, the trial court told the jury to consider the contract and the relevant extrinsic evidence and to decide what the contract meant. These instructions make reasonably clear that the trial court itself must have determined that the contract was ambiguous and, thus, that it was up to the jury to determine the meaning of the contract, with the use of relevant extrinsic evidence being permissible.

to receive one hundred percent of his renewal commissions. Therefore, plaintiff argued, the Court of Appeals erred in concluding that years two through nine of the vesting schedule applied to agents who died or became disabled. The Court of Appeals denied plaintiff's motion for rehearing without explanation.

## A. THE CONTRACT LANGUAGE IS AMBIGUOUS

"An insurance contract is ambiguous when its provisions are capable of conflicting interpretations." *Nikkel*, *supra* at 566. Accordingly, if two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous. Further, courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare an ambiguity. Instead, contracts must be "'construed so as to give effect to every word or phrase as far as practicable.'" *Hunter v Pearl Assurance Co, Ltd*, 292 Mich 543, 545; 291 NW 58 (1940), quoting *Mondou v Lincoln Mut Cas Co*, 283 Mich 353, 358-359; 278 NW 94 (1938).

In our judgment, the vesting schedule found in § 5(B) of the Agent's Agreement irreconcilably conflicts with the Agent's Manual's definition of retirement, which the Agent's Agreement incorporates. Under the vesting schedule, an agent who has served two or more years with defendant is entitled to

9

a percentage of renewal commissions; while, under the Agent's Manual's definition of retirement, an agent is only entitled to a percentage of renewal commissions if that agent is at least sixty-five years old and has served ten or more years with defendant. Accordingly, while plaintiff is entitled to renewal commissions under the vesting schedule, he is not entitled to renewal commissions under the Agent's Manual's definition of retirement. Therefore, the language of the contract is ambiguous.

The Court of Appeals attempted to avoid a finding of ambiguity by concluding that, if an agent has less than ten years of service with defendant, he cannot be considered retired and, thus, years two through nine of the vesting schedule would not apply to him; however, these years *would* apply to an agent who died or became disabled without reaching the age of sixty-five and without having ten years of service with defendant. Although the Court of Appeals is correct in recognizing that it must give some meaning to years two through nine of the vesting schedule, in its attempt to give these years some meaning, it has ignored another portion of the contract, that is, § 5(A) of the Agent's Agreement. Just as "[c]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory," *State*

*Farm & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002), courts must also give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory.

Section 5(A) of the Agent's Agreement provides that an agent who dies or becomes disabled is automatically one hundred percent vested. Therefore, contrary to the contention of the Court of Appeals, years two through nine of the vesting schedule, which provide for less than one hundred percent vesting, would have no application to an agent who dies or becomes disabled. If the contract is read, as the Court of Appeals read it, to require an agent to be at least sixty-five years old and to have served as an agent for defendant for at least ten years to be considered retired, years two through nine of the vesting scheduled are rendered meaningless. Because there is no way to read the provisions of this contract in reasonable harmony, the language of the contract is ambiguous.

### B. INTERPRETATION OF AMBIGUOUS CONTRACT

It is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury. *Hewett Grocery Co v Biddle Purchasing Co*, 289 Mich 225, 236; 286 NW 221 (1939). "'Where a contract is to be construed

11

by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions.'" *O'Connor v March Automatic Irrigation Co*, 242 Mich 204, 210; 242 NW 784 (1928)(citation omitted).

> Where a written contract is ambiguous, a factual question is presented as to the meaning of its provisions, requiring a factual determination as to the intent of the parties in entering the contract. Thus, the fact finder must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning. [11 Williston, Contracts (4th ed), § 30:7, pp 87-91.]

In resolving such a question of fact, i.e., the interpretation of a contract whose language is ambiguous, the jury is to consider relevant extrinsic evidence. As this Court explained in *Penzien v Dielectric Products Engineering Co, Inc*, 374 Mich 444, 449; 132 NW2d 130 (1965):

> "If the contract in question were ambiguous or 'doubtful,' extrinsic evidence, particularly evidence which would indicate the contemporaneous understanding of the parties, would be admissible as an aid in construction of the disputed terms."

> "The law is clear that where the language of the contract is ambiguous, the court can look to such extrinsic evidence as the parties' conduct, the statements of its representatives, and past practice to aid in interpretation." [Citations omitted.]

12

Looking at relevant extrinsic evidence to aid in the interpretation of a contract whose language is ambiguous does not violate the parol evidence rule.

> "The parol evidence rule does not preclude the admission of parol or extrinsic evidence for the purpose of aiding in the interpretation or construction of a written instrument, where the language of the instrument itself taken alone is such that it does not clearly express the intention of the parties or the subject of the agreement. Such evidence is admitted not to add to or detract from the writing, but merely to ascertain what the meaning of the parties is. Thus a written instrument is open to explanation by parol or extrinsic evidence when it is expressed in short and incomplete terms, or is fairly susceptible of two constructions, or where the language employed is vague, uncertain, obscure, or ambiguous, and where the words of the contract must be applied to facts ascertainable only by extrinsic evidence, a resort to such evidence is necessarily permitted." [*Edoff v Hecht*, 270 Mich 689, 695-696; 260 NW 93 (1935)(citation omitted).]

In interpreting a contract whose language is ambiguous, the jury should also consider that ambiguities are to be construed against the drafter of the contract.[11] *Herweyer v*

---

[11] In this case, the trial court instructed the jury that it should consider relevant extrinsic evidence and that any ambiguities should be construed against the drafter of the contract. Specifically, the trial court instructed the jury to

> consider the words of the contract as well as the parties' actions.

> In determining whether renewal commissions are due to Mr. Klapp, you should consider the interpretation that the parties themselves had given to the Agent's Agreement used by United

(continued...)

13

*Clark Hwy Services, Inc*, 455 Mich 14, 22; 564 NW2d 857 (1997).[12]  This is known as the rule of contra proferentem. However, this rule is only to be applied if all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have left the jury unable to determine what the parties intended their contract to mean.[13] Accordingly, if the extrinsic evidence indicates that the parties intended their contract to have a particular meaning, this is the meaning that should be given to the contract, regardless of whether this meaning is in accord with the drafter's or the nondrafter's view of the contract.  In other words, if a contract is ambiguous regarding whether a term

---

[11](...continued)
Insurance for Mr. Klapp and other agents.

* * *

     Provisions in the Agent's Agreement or Agent Manual which are ambiguous or unclear should be interpreted against the party that drafted the document, in this case, United Insurance.  This means that you should resolve any doubt or ambiguity in the document itself against United Insurance and in favor of Mr. Klapp.

[12] "This rule is frequently described under the Latin term of *contra proferentem*, literally, against the offeror, he who puts forth, or proffers or offers the language."  Williston, *supra*, § 32:12, pp 472-475.

[13] Although extrinsic evidence cannot resolve an ambiguity in the sense that it can transform ambiguous contract language into unambiguous contract language, extrinsic evidence may help the jury determine what the parties to a contract intended the ambiguous contract language to mean.

means "a" or "b," but relevant extrinsic evidence leads the jury to conclude that the parties intended the term to mean "b," then the term should be interpreted to mean "b," even though construing the document in the nondrafter's favor pursuant to an application of the rule of contra proferentem would produce an interpretation of the term as "a."

However, if the language of a contract is ambiguous, and the jury remains unable to determine what the parties intended after considering all relevant extrinsic evidence, the jury should only then find in favor of the nondrafter of the contract pursuant to the rule of contra proferentem. In other words, the rule of contra proferentem should be viewed essentially as a "tie-breaker," to be utilized only after all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have been applied and found wanting.

This view of the rule of construing against the drafter of the contract is in accordance with the 2 Restatement Contracts, 2d, § 206, p 105, which provides:

> In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds.

The comments following this rule state that "[i]n cases of doubt, therefore, so long as other factors are not decisive,

15

there is substantial reason for preferring the meaning of the other party. . . ."  *Id*.  "[T]he rule is 'the last one to be resorted to, and never to be applied except when other rules of interpretation fail.'"  *Id*., Reporter's Note, p 106, citation omitted.  Treatises also indicate that this is a so-called "rule of last resort."  For example, 5 Corbin, Contracts (Rev ed, 1998), § 24.27, pp 297-300, provides:

> The "contra proferentem" rule has been described as being applicable only as a last resort, when other techniques of interpretation and construction have not resolved the question of which of two or more possible reasonable meanings the court should choose.  One court wrote that it is "a tie breaker when there is no other sound basis for choosing one contract interpretation over another."  . . .  Another federal court expressed a similar reservation concerning use of the rule: "[T]his rule of construction should not be enlarged to [clarify] perfunctorily . . . an ambiguous meaning; the trier of fact should still consider the drafting party's evidence."  The "contra proferentem" rule thus yields to other techniques of interpretation, including the attempt to give a valid, legal, and reasonable meaning to as many of the contract terms as possible.  [Citations omitted.]

In addition, Williston, *supra*, § 32:12, pp 480-482, provides:

> The rule of contra proferentem is generally said to be a rule of last resort and is applied only where other secondary rules of interpretation have failed to elucidate the contract's meaning. . . . Finally, the rule does not justify a court in adopting an interpretation contrary to that asserted by the drafter, simply because of his or her status as the drafter. Rather, it is only when consistent with the rules of contract interpretation, the meaning proposed by the nondrafter (or an altogether different meaning determined by the court) is reasonable—when there

16

is a true ambiguity and the court must choose between two or more reasonable meanings—that the rule of contra proferentem is properly invoked.

The rule of contra proferentem is a rule of last resort because, "The primary goal in the construction or interpretation of any contract is to honor the intent of the parties," *Rasheed v Chrysler Corp*, 445 Mich 109, 127 n 28; 517 NW2d 19 (1994), and the rule of contra proferentem does not aid in determining the parties' intent.  Instead, the comments after the restatement refer to the rule of contra proferentem, not as a rule of interpretation, but as "a rule of legal effect."  2 Restatement, *supra* at 105.  It is a rule of legal effect, rather than a rule of legal interpretation, because its purpose is not to render more accurate or more perfect a jury's understanding of the meaning of the contract, but is merely to ascertain the winner and the loser in connection with a contract whose meaning has eluded the jury despite all efforts to apply conventional rules of interpretation.  As stated in Corbin, *supra*, p 306:

> The rule is not actually one of interpretation, because its application does not assist in determining the meaning that the two parties gave to the words, or even the meaning that a reasonable person would have assigned to the language used.  It is chiefly a rule of policy, generally favoring the underdog.  It directs the court to choose between two or more possible reasonable meanings on the basis of their legal operation, i.e., whether they favor the drafter or the other party.

In sum, the jury can consider relevant extrinsic evidence as an aid in interpreting a contract whose language is ambiguous. However, if, after the jury has applied all other conventional means of contract interpretation and considered the relevant extrinsic evidence, the jury is still unable to determine what the parties intended, the jury should then construe the ambiguity against the drafter.  That is, the rule of contra proferentem is only to be applied if the intent of the parties cannot be discerned through the use of all conventional rules of interpretation, including an examination of relevant extrinsic evidence.

The concurring opinion asserts that, "when a contract is drafted entirely by one party, without any bilateral negotiations," the rule of contra proferentem "should be applied as the primary rule of construction, not as a last resort . . . ." *Post* at 1-2.  That is, when a contract whose language is ambiguous is drafted without bilateral negotiations, a jury should not be allowed to look at relevant extrinsic evidence in order to discern the parties' intent. Instead, the ambiguous language is simply to be construed against the drafter.

We respectfully disagree with the concurring opinion's reference to the rule of contra proferentem as a "rule of construction."   In our judgment, the rule of contra

18

proferentem is not a rule of construction, rather, as explained above, it is a rule of legal effect.  See pp 17-18. While rules of construction are designed to help determine the parties' intent, the rule of contra proferentem is designed to resolve a dispute where the parties' intent cannot be determined.

Further, as the concurring opinion correctly states, "[t]he ultimate objective in interpreting an ambiguous contract is to ascertain the intent of the parties . . . ." *Post* at 3.  Therefore, in our judgment, it is only obvious that a method of construing a contract that helps ascertain the intent of the parties should be preferred over one that does not.[14]  We agree with the concurring opinion that extrinsic evidence "'provides an incomplete guide with which to interpret contractual language.'" *Post* at 4.  That is,

_____

[14] Although the concurring opinion recognizes that "[t]he ultimate objective in interpreting an ambiguous contract is to ascertain the intent of the parties," *post* at 3, it ultimately concludes that the "public-policy" interests in "provid[ing] a strong incentive for a party drafting a contract to use clear and unambiguous language" and to avoid "more involved litigation," somehow overrides this "ultimate objective." *Post* at 4-5.  That is, the concurring opinion concludes that the rule of contra proferentem should be applied as "the primary rule of construction," *post* at 2, because it allegedly furthers these latter two interests, although to apply it, as we do, as a rule of last resort is more in accord with the "ultimate objective in interpreting an ambiguous contract" because, as explained above, while the rule of contra proferentem does not help determine the parties' intent, actual rules of construction, such as looking at relevant extrinsic evidence, do.

extrinsic evidence is not the best way to determine what the parties intended.   Rather, the language of the parties' contract is the best way to determine what the parties intended.  However, where, as in cases such as this one, it is not possible to determine the parties' intent from the language of their contract, the *next* best way to determine the parties' intent is to use relevant extrinsic evidence.  Such evidence at least affords a way by which to ascertain the parties' intent, unlike the rule of contra proferentem, which focuses solely on the status of the parties to a contract.[15]

Finally, we disagree with the concurring opinion's contention that "this Court has consistently applied the rule of construing against the drafter as the primary tool of construction . . . ."  *Id.* at 6.  Not one of the cases cited in the concurring opinion, in fact, concludes that relevant extrinsic evidence is inadmissible to help a jury determine the parties' intent where the language of a contract is ambiguous.  In other words, not a single one of these cases concludes that the rule of contra proferentem is somehow a "primary rule of construction."  Instead, in each of these

---

[15] Regardless of whether a contract is drafted with or without bilateral negotiations, looking at relevant extrinsic evidence to help determine the parties' intent where their contractual language is ambiguous better comports with the ultimate goal of "honor[ing] the intent of the parties," *Rasheed*, *supra* at 127 n 28, than does the rule of contra proferentem.

cases, the rule of contra proferentem was, in all likelihood, applied because there was no way to determine the parties' intent. That is, the language of the contract was ambiguous, but there was no relevant extrinsic evidence available.[16] Therefore, the concurring opinion's reliance on these cases is misplaced.[17]

In this case, plaintiff introduced as extrinsic evidence an older version of the Agent's Agreement and deposition testimony from defendant's executives showing that defendant's past practice had been to pay former agents the renewal

---

[16] As the concurring opinion points out, these cases do not address whether a jury should be allowed to examine relevant extrinsic evidence when interpreting an ambiguous contract or whether the rule of contra proferentem should be applied as the "only [] tool of construction in resolving ambiguous contracts." *Post* at 7 n 3. Presumably, this issue was not addressed because it was not in question. That is, the parties in those cases did not attempt to introduce relevant extrinsic evidence. However, because these cases did apply the rule of contra proferentem, the concurring opinion assumes that the Court in those cases applied this rule as the "primary rule of construction." In our judgment, a far more likely explanation is that the Court viewed the rule of contra proferentem, not as the only tool of construction in resolving *all* ambiguous contracts, but as the only tool available to resolve *these* ambiguous contracts.

[17] In fact, in one of the cases cited in the concurring opinion, this Court specifically stated that "[i]f the language of a contract is ambiguous, the court's duty is to look beyond the bare language of the agreement to determine its meaning." *Stine v Continental Casualty Co*, 419 Mich 89, 112; 349 NW2d 127 (1984). In this case, this Court further stated that "[c]ommon sense suggests that extrinsic evidence, including parol evidence, should be admissible to clarify the meaning of any ambiguous contract . . . ." *Id*. at 112 n 7.

21

commissions specified by § 5(B) of the vesting schedule, regardless of whether those agents had ten years of service with defendant or had reached age sixty-five.

Plaintiff argues that the definition of retirement under the contract is simply "disengagement from the insurance industry" and that the second sentence under the section defining retirement in the Agent's Manual was unintentionally left over from a time before defendant's Agent's Agreement contained a vesting schedule. Not only does this construction of the contract accord meaning to the entire vesting schedule, but it is also the construction that defendant itself has applied for the past eight years, that is, since it adopted the new Agent's Agreement containing the vesting schedule.[18] In other words, defendant had been paying the specified percentages of renewal commissions to agents, who were not sixty-five years of age and had not worked for defendant for at least ten years, as long as they had disengaged from the insurance industry.[19]

Defendant argues that the jury should not have considered

_____

[18] The new Agent's Agreement containing the vesting schedule was adopted in 1989, and defendant applied the vesting schedule to agents who were not at least sixty-five years old and who had not served as agents for defendant for at least ten years until 1997.

[19] Defendant argues that its payment of such commissions had been a mistake on its part.

this extrinsic evidence. However, as discussed above, the jury is to consider relevant extrinsic evidence when interpreting a contract whose language is ambiguous. How the drafting party has interpreted ambiguous contractual language in the past is certainly relevant in determining what the parties intended such language to mean. The meaning of a provision in a contract whose language is ambiguous "must be ascertained in the light of all of the relevant circumstances, . . . including, . . . the meanings accepted by the parties." *Davis v Kramer Bros Freight Lines, Inc*, 361 Mich 371, 375; 105 NW2d 29 (1960). "There is no doubt that evidence of practical interpretation by the parties is admissible as an aid in the determination of the meaning to be given legal effect." *Id*. at 375-376.

> Where parties by such a uniform course of conduct for a long time have given a contract a particular construction, that construction will be adopted by the courts.

> "The practical interpretation given to contracts by the parties to them, while engaged in their performance and before any controversy has arisen concerning them, is one of the best indication of their true intent." [*People v Michigan Central R Co*, 145 Mich 140, 166; 108 NW 772 (1906) (citation omitted) (portion of dissent by GRANT, J., assented to by the majority at 150).]

Because the language of the contract here is ambiguous, and because defendant had, in the past, construed this contract to require the payment of retirement renewal commissions

23

according to the vesting schedule, even if the agent was not at least sixty-five years old and had not served as an agent with defendant for at least ten years, the trial court did not err in instructing the jury to consider this evidence.

Although the trial court correctly instructed the jury that it could consider relevant extrinsic evidence and that any ambiguities should be construed against the drafter pursuant to the rule of contra proferentem, the trial court failed to inform the jury that it could only apply the rule of contra proferentem if it was unable to discern the parties' intent from the extrinsic evidence. However, in this case, this error was harmless. The jury did one of two things here. The jury either construed the language of the contract in favor of plaintiff pursuant to the rule of contra proferentem, or it construed the language of the contract in favor of plaintiff because the extrinsic evidence pointed to a construction of the contract in plaintiff's favor.[20] Accordingly, regardless of which approach the jury used, it reached the (same) right result and, thus, failure to reverse is not inconsistent with substantial justice. MCR 2.613(A); *Cox v Flint Bd of Hospital Managers*, 467 Mich 1, 8; 651 NW2d

---

[20] All the extrinsic evidence presented at trial favors plaintiff's construction of the contract. Defendant did not present any extrinsic evidence at trial that favors its construction.

24

356 (2002).[21]

### IV. CONCLUSION

If two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous.  In this case, the contract's definition of retirement irreconcilably conflicts with the contract's vesting schedule.  Under the contract's definition of retirement, plaintiff is not entitled to renewal commissions; while, under the vesting schedule, plaintiff is entitled to renewal commissions.  Accordingly, the contract language at issue here is ambiguous.

The interpretation of a contract whose language is ambiguous is a question of fact for the jury to decide.  When interpreting a contract whose language is ambiguous, the jury is to consider relevant extrinsic evidence.  That the drafting party interpreted the ambiguous contractual language in a certain way for many years is relevant extrinsic evidence.

In interpreting a contract whose language is ambiguous and in which the parties' intent cannot otherwise be determined through resort to relevant extrinsic evidence, the jury should construe any ambiguities against the drafter of

---

[21] "Instructional error warrants reversal if the error 'resulted in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be "inconsistent with substantial justice."'" *Cox, supra* at 8 (citations omitted).

the contract. That is, if, after the jury has considered all conventional means of contract interpretation and all relevant extrinsic evidence, it is still unable to determine what the parties intended, the jury should then construe the ambiguity against the drafter.

Therefore, we conclude that the trial court here did not err in instructing the jury that it should consider relevant extrinsic evidence in order to discern the parties' intent, and that it should also construe any ambiguities against the drafter. Although the trial court did err in failing to inform the jury that it should only construe ambiguities against the drafter if it cannot discern the parties' intent from the relevant extrinsic evidence, this error was harmless. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the Court of Appeals for consideration of defendant's other appellate issue and plaintiff's cross-appeal.

Stephen J. Markman
Maura D. Corrigan
Clifford W. Taylor
Robert P. Young, Jr.

CAVANAGH, J.

I concur in the result only.

Michael F. Cavanagh

26

# STATE OF MICHIGAN

## SUPREME COURT

CRAIG A. KLAPP,

    Plaintiff-Appellant,

v                                                    Nos. 119175, 119176

UNITED INSURANCE GROUP AGENCY,
INC.,

    Defendant-Appellee.
_____

WEAVER, J. *(concurring)*.

I concur in the decision to reverse the judgment of the Court of Appeals and remand the case to that Court for consideration of issues raised, but not addressed, below. I write separately because I disagree with the majority's holding that "the rule of contra proferentem is only to be applied if the intent of the parties cannot be discerned through the use of all conventional rules of interpretation, including an examination of relevant extrinsic evidence." *Ante* at 18. Although I agree that this is the general rule, I would hold that when a contract is drafted entirely by one party, without any bilateral negotiations, the rule that a contract is to be strictly construed against its drafter

1

should be applied as the primary rule of construction, not as a last resort, and extrinsic evidence is not admissible to clarify ambiguity in the contract.

The doctrine of contra proferentem, under which a contract that is ambiguous will be construed against the party preparing it, is a well-established rule.  See, e.g., *Universal Underwriters Ins Co v Kneeland,* 464 Mich 491, 498; 628 NW2d 491 (2001) (discussing the "rule requiring that contractual ambiguities be construed against the drafter"); *Herweyer v Clark Hwy Services, Inc*, 455 Mich 14, 22; 564 NW2d 857 (1997)("As the contract period under consideration is ambiguous, it must be construed against the drafter.").  In general, it is a rule of last resort, to be applied only if the intent of the parties cannot be discerned by the use of other rules of interpretation.  See 2 Farnsworth, Contracts (2nd ed), ch 7 §7.11,  and 5 Corbin, Contracts (rev ed, 1998), § 24.27, pp 297-300.

The questions we asked the parties to address[1] are

---

[1]In granting leave to appeal, this Court directed the parties to include among the issues to be briefed:

> Where, as in the present case, a contract is drafted entirely by one party, without any bilateral negotiations, is extrinsic evidence admissible to clarify ambiguity in the contract or is any ambiguity in the contract simply to be construed against the drafter (without considering any extrinsic evidence)? [467 Mich 687 (2002).]

2

whether extrinsic evidence should be precluded and whether the rule of construing against the drafter should be applied initially, instead of as a rule of last resort, when the contract is drafted entirely by one party without bilateral negotiation. I conclude that in such a case, the rule of contra proferentem should be applied as the primary rule of construction, not as a last resort, and that extrinsic evidence is not admissible to clarify the ambiguity.

The ultimate objective in interpreting an ambiguous contract is to ascertain the intent of the parties so the agreement can be carried out according to that intent. *Loyal Order of Moose, Adrian 1034 v Faulhaber,* 327 Mich 244, 250; 41 NW2d 535 (1950); *Stine v Continental Casualty Co,* 419 Mich 89, 112; 349 NW2d 127 (1984). When there are bilateral negotiations between the parties, a court can assume that there is a relation between the contract terms that were agreed upon and the parties' expectations as revealed by extrinsic evidence. However, "unless extrinsic evidence can speak to the intent of *all* parties to a contract, it provides an incomplete guide with which to interpret contractual language." *SI Mgt LP v Wininger,* 707 A2d 37, 43 (Del, 1998) (emphasis in original).

The Supreme Court of Delaware has held that where ambiguity arises in a contract drafted solely by one side and

3

offered to others on a take-it-or-leave-it basis, the rule of construing against the drafter is determinative. *SI Mgt, supra;* followed by *Intel Corp v Via Technologies, Inc,* 174 F Supp 2d 1038 (ND Cal, 2001). In *SI Mgt* the Delaware court analyzed its approach to interpreting insurance contracts. The Delaware courts had said that if an insurance contract is ambiguous, "'the principle of *contra proferentem* dictates that the contract must be construed against the drafter.'" *SI Management, supra* at 42 (citation omitted). The court found that the policy behind that principle of construing against the drafter is that the insurer was in complete control of creating and drafting the policy, while the insured had little say about those terms except to take them or leave them or to select from limited terms offered by the insurer. Because of that, the Delaware courts had consistently held that the insurer had an obligation to make the terms clear and should suffer the consequences of convoluted or confusing terms. In *SI Mgt* the Delaware Supreme Court expanded this principle to other contracts where there was not a bilaterally negotiated agreement, and one party had signed onto an agreement that it had no hand in drafting.

There are sound public-policy reasons behind a black letter rule that when contractual provision are drafted entirely by one party, any ambiguity in the contract is to be

4

construed against the drafter.  First, the rule of contra proferentem provides a strong incentive for a party drafting a contract to use clear and unambiguous language.  Second, the use of extrinsic evidence in circumstances involving ambiguity could be destabilizing to contractual relations and require more involved litigation by allowing parties to use assertions of oral understandings and examples of past behavior rather than relying on a written contract with the understanding that any ambiguity should be construed against its drafter.

This Court has not previously addressed whether the rule of construing against the drafter should be used as a primary rule of construction in ambiguous contracts or only used after considering any extrinsic evidence available.[2]  However, in interpreting ambiguous contracts, this Court has consistently applied the rule of construing against the drafter as its primary, indeed sole, aid to construction.  See *Herweyer v Clark Hwy Services,* 455 Mich 14, 22; 564 NW2d 857 (1997) ("As the contract period under consideration is ambiguous, it must

---

[2]The majority asserts that none of the cases I cite "concludes that the rule of contra proferentem is somehow a 'primary rule of construction.'" *Ante* at 20.  It is noteworthy that similarly none of the Michigan cases cited by the majority state that the rule of contra proferentem is a rule of last resort.  It is precisely because this Court had not previously addressed the question whether the rule of contra proferentem should be applied without first examining any relevant extrinsic evidence that our order granting leave to appeal in this case asked the parties to discuss it in their briefs.

5

be construed against the drafter, the defendant."), *Lichnovsky v Ziebart Int'l Corp,* 414 Mich 228, 239; 324 NW2d 732 (1982) ("Any ambiguity in the expression must be construed against Ziebart, as its predecessor drafted the agreement."), *Ladd v Teichman,* 359 Mich 587, 592; 103 NW2d 338 (1960) ("We agree with appellees that appellant having drafted the contract, any ambiguity contained in it must be construed against him."), and *Veenstra v Associated Broadcasting Corp*, 321 Mich 679, 691; 33 NW2d 115 (1948) ("Defendants caused the drafting of the two contracts and any doubt or ambiguity concerning the nature of the contracts must be resolved against the defendants.").

Similarly, this Court has consistently applied the rule of construing against the drafter as the primary tool of construction in insurance contracts. In insurance contracts, one party decides the terms of the contract, drafts the contract, and presents it to the other party in a take-it-or-leave-it fashion, all with no bilateral negotiation. *Michigan Millers Mut Ins Co v Bronson Plating Co,* 445 Mich 558, 567; 519 NW2d 864 (1994) (in interpreting insurance cases, a well-established principle of construction is, "Where ambiguity is found, the court must construe the term in the manner most favorable to the insured."). See also *State Farm Mut Automobile Ins Co v Enterprise Leasing Co*, 452 Mich 25, 38;

6

549 NW2d 345 (1996) ("[b]ecause State Farm prepared the form insurance contracts, any ambiguity must be strictly construed against it."), *Raska v Farm Bureau Mut Ins Co of Michigan,* 412 Mich 355, 362; 314 NW2d 440(1982) ("If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand that there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage."), and *Bonney v Citizens' Mut Automobile Ins Co*, 333 Mich 435, 438; 53 NW2d 321 (1952) ("An ambiguous contract must be construed against the party who prepared it.").[3]

I would hold that this principle should be extended beyond insurance contracts and applied to other contracts in which there is a similar disparity of control in the creation of the terms of the contract. Here defendant was the entity

---

[3]The majority says that in all the cases cited above "the rule of contra proferentem was, in all likelihood, applied because there was no way to determine the parties' intent. That is, the language of the contract was ambiguous, but there was no relevant extrinsic evidence available." *Ante* at 21. The majority's assertion is not supported by the opinions themselves. None of the opinions cited states that relevant extrinsic evidence was not available, nor that there was no other way by which to determine the parties' intent. Instead, the opinions consistently apply the well-established rule of construing against the drafter as the first—indeed the only—tool of construction in resolving ambiguous contracts.

7

in sole control of the process of creating and setting forth the terms of the contract.  The parties did not engage in bilateral negotiation; the plaintiff's only choice in the terms of the contract was to take them or leave them.  In such a situation, any ambiguity in the contract should have been construed against the drafter, without considering the extrinsic evidence.

In this case, the trial judge allowed the plaintiff to introduce a variety of extrinsic evidence, including references to the older version of the Agent's Agreement[4] and deposition testimony by the defendant's executives.[5]  I would hold that the trial court erred in admitting the extrinsic evidence to resolve the contract's ambiguity.  However, that error was harmless, because the same result was achieved as would have been if the contract had been construed against its drafter, defendant.

---

[4]The plaintiff was attempting to show that the language "[v]estment [sic] for retirement is age 65 or 10 years of service whichever is later" in the Agent's Manual was unintentionally left in the Agent's Manual, and was no longer relevant given the new Agent's Agreement.

[5]This testimony showed that the defendant's past practice had been to pay former agents the renewal commissions specified by the § 5(B) vesting schedule, even when those agents did not have ten years of service with the defendant or had not reached age sixty-five.

Accordingly, I concur with the decision to reverse the judgment of the Court of Appeals and remand the case to that Court for consideration of those issues raised, but not addressed below.

Elizabeth A. Weaver
Marilyn Kelly