MARKMAN, J.
(dissenting). I respectfully dissent. I would deny leave to appeal and uphold the judgment of *142 the Court of Appeals. I would also call on the Legislature to promptly clarify its intentions concerning the need for the certification of foreign affidavits used in Michigan judicial proceedings.
Although the range of support from amici curiae for plaintiffs cross-application is impressive— encompassing the Michigan Trial Lawyers Association, the Michigan Defense Trial Counsel, and the State Bar of Michigan— their briefs and the majority opinion are ultimately unpersuasive, in my judgment, because each fails to accord any meaning to MCL 600.2102, which states that foreign affidavits “must be authenticated” by the procedures set forth in that law. It is not to read this law “technically,” “narrowly,” “crabbedly,” “literally,” “unreasonably,” or “conservatively” to conclude that “must be authenticated” means what it says. The majority opinion would simply transform what the Legislature has written into “may be authenticated.”[1] Although I am sympathetic to this result, and would urge the Legislature to consider an amendment to that effect, it is not within this Court’s authority to modify the clear language of the law, even where there is a consensus within the bar for such a result.
Unquestionably, considerable confusion is introduced by the Uniform Recognition of Acknowledgments Act (URAA), which states, in part:
*143 This act provides an additional method of proving notarial acts. Nothing in this act diminishes or invalidates the recognition accorded to notarial acts by other laws of this state. [MCL 565.268.]
However, the most obvious means of reconciling and harmonizing MCL 600.2102 and MCL 565.268[2] is to recognize that the former— applicable only to the use of affidavits in judicial proceedings— is the more specific of these provisions, and therefore the latter is best understood as applicable only to the use of affidavits outside the scope of judicial proceedings. Such a harmonization, while imperfect as all harmonizations must be, respects the language of § 2102, while also respecting the language of the URAA, albeit outside the judicial sphere. While a perfect harmonization of these provisions is not possible, a harmonization that gives reasonable meaning to both provisions should be preferred to a “harmonization” that gives no meaning at all to one provision. In contrast, the majority’s “harmonization,” while fully respecting the language of the URAA, would accord no respect to the language of § 2102. As the Court of Appeals correctly observed, the majority’s interpretation “basically makes the certification requirement in MCL 600.2102(4) worthless or nugatory.” Apsey v Mem Hosp (On Reconsideration), 266 Mich App 666, 677 n 4; 702 NW2d 870 (2005).
*144 In response to Justice Young’s concurring opinion, I do not assert that the majority opinion renders § 2102 nugatory “merely because, as a matter of practice, the public and the bar might preferentially choose to use the more liberal statute.” Ante at 141. Rather, I assert this because the majority opinion replaces “must” with “may,” and thereby renders § 2102 “trifling, of little or no consequence, inconsequential,” Webster’s New Collegiate Dictionary (4th ed)— that is, “nugatory.” In so doing, the majority opinion departs from what the concurring justice correctly describes as “the exacting judicial philosophy that has marked this Court in recent years.” Ante at 141.
The concurring opinion also errs in characterizing the dispute between the majority and dissenting opinions as one in which the majority adheres to the dispositional rule that “later-in-time” statutes control while the dissent adheres to the rule that more specific statutes control. As useful as such maxims may be where statutes stand in irreconcilable conflict and where it must be determined which is to trump the other, it is first the obligation of a court to seek to harmonize or reconcile statutes so that neither must be trumped out of existence. “To make laws agree or harmonize with laws is the best mode of interpreting them.” Halkerston, Maxims 70; see also Nowell v Titan Ins Co, 466 Mich 478, 483; 648 NW2d 157 (2002) (“In... a case of tension,... it is our duty to, if reasonably possible, construe them both so as to give meaning to each; that is, to harmonize them.”).
That is, the process of harmonization, which is simply another name for one aspect of the process of interpretation, precedes the application of dispositional maxims of the sort identified by the concurring opinion. See Klapp v United Ins Group Agency, Inc, 468 Mich *145 459, 473; 663 NW2d 477 (2003). This opinion undertakes to harmonize; the majority opinion does not. No “harmonization” can fairly be said to occur where one statute ends up utterly without practical meaning or effect. Koenig v South Haven, 460 Mich 667, 677; 597 NW2d 99 (1999) (“[A] court’s duty is to give meaning to all sections of a statute and to avoid, if at all possible, nullifying one by an overly broad interpretation of another.”). “Words ... ought to be interpreted in such a way as to have some operation.” 8 Coke Reports 94a. “Words are to be received with effect, so that they may produce some effect.” Bacon, Maxims, reg 3. “Words should be understood effectively.” Rickets v Livingston, 2 Johns Cas 97, 101 (NY Sup Ct, 1800). If the majority opinion does not genuinely render § 2102 nugatory in the view of the concurring opinion, it is difficult to imagine when a statue would ever be rendered nugatory by judicial construction. A statute need not be physically ripped out of a legal code and set ablaze in a bonfire in order to be rendered nugatory; it is merely necessary that a statute be rendered of no consequence. Here, the operative word of § 2102 is transformed from “must” to “may,” and there is simply no circumstance in which the statutory shell that remains could ever have any applicability or pertinence separate from the URAA. The concurring opinion fails to differentiate between an imperfect harmonization— which is what all harmonizations must necessarily be— and a non-harmonization. The difference is the difference between an interpretation and a non-interpretation.
The § 2102 “problem”— and I would acknowledge it as such— is easily and quickly remediable by the Legislature. By contrast, the “problem” caused to our jurisprudence by this Court reading the law in a manner that is unsupported by its language is considerably less easily and quickly remediable.

 The majority opinion asserts that its harmonization “does not render the phrase nugatory” because “[i]f a party chooses to use this method, the affidavit still ‘must be authenticated’ in the same manner.” Ante at 132 n 8. But, of course, the majority opinion’s specified condition— “if a party chooses to use this method”— drains the remainder of its statement of any coherence, for this is the very question in controversy— must a party choose to use this method? The Legislature says “yes,” and the majority opinion says “no.” The majority opinion does “equity” in the guise of statutory interpretation, distorting both legal concepts in the process.

 The majority states, “We question how the Legislature could have signaled more clearly its intent that the URAA should function as an alternative to MCL 600.2102 than by stating that the URAA ‘provides an additional method of proving notarial acts.’ ” Ante at 131. I agree with this. However, it is equally true that the Legislature could hardly “have signaled more clearly its intent” concerning § 2102 than by providing that certain notarial acts “must be” authenticated under the procedures of that provision. The issue here is not the clarity of the URAA but how to reconcile it with the equally clear § 2102.