*894 BRYSON, Circuit Judge,
dissenting.
I respectfully dissent. Under Michigan law, which controls here, the interpretation of a contract is a question of law if the contract language is unambiguous, but if the language is ambiguous, the interpretation of the contract is a question of fact for the trier of fact. Klapp v. United Ins. Group Agency, Inc., 468 Mich. 459, 663 N.W.2d 447, 451, 453-54 (2003). Because I believe the phrase “practice of [Ford’s] Patent Rights” is ambiguous, I would reverse the district court’s judgment and remand this case for factual resolution of the ambiguity, including the consideration of extrinsic evidence.
The majority is correct that the term “Patent Rights” is unambiguous, as that term is explicitly defined in the donation agreement to encompass not only the right to make, use and sell the donated technology, but also the right to enforce the patents (although the agreement ineptly defines the “Patent Rights” in circular fashion as including the right to enforce the “Patent Rights”). The problem with paragraph 3.3 of the agreement, however, is that while the meaning of the term “Patent Rights” is clear, the meaning of the term “practice” is not. And the meaning of “practice” is critical to defining the scope of the release effected by paragraph 3.3. For example, if paragraph 3.3 released Ford from any claims based on NISTAC’s “exercise” of the patent rights, then paragraph 3.3 would clearly bar NISTAC from enforcing the patents against Ford. If, on the other hand, paragraph 3.3 released Ford from claims based on NISTAC’s “employment” or “performance” of the patent rights, then the release would shield Ford only from claims based on NISTAC’s manufacture, use or sale of the donated technology. It is unclear in this context whether the verb “practice” has a meaning more like “exercise” or more like “employ” or “perform”; each of those interpretations of “practice” finds support in standard dictionaries. Thus, the phrase “practice of [Ford’s] Patent Rights” is ambiguous.
The word “practice” is a term of art in patent law that ordinarily refers to a party’s manufacture, use, or sale of a claimed invention, but not a party’s enforcement of the rights conferred by the patent. It is true that paragraph 3.3 does not refer to “practicing the invention” or “practicing the patent,” which are the more typical formulations in patent law. But in light of the fact that the disputed agreement is an agreement concerning patents, it is reasonable to interpret the term “practice” consistently with the use of that term in the patent field. I submit that no patent lawyer, if presented with the sentence “I intend to practice my patent rights” as a way of expressing an intention to sue for infringement, would be able to resist the compulsion to strike out the sentence and rewrite it. Yet the court is in effect saying that the parties to this agreement unambiguously demonstrated their understanding that NISTAC agreed not to sue Ford for infringement by using just such an expression: that NISTAC agrees to release Ford from claims arising “by reason of [NISTAC’s] practice of [Ford’s] Patent Rights.”
The context of paragraph 3.3 adds support to NISTAC’s interpretation. Paragraph 3.1 protects Ford against liability to NISTAC for infringement suits by third-party patentees. Paragraph 3.2 refers to “applications and uses” of the donated technology as well as “future developmental and commercial activities” associated with the donated technology, and in that context states that Ford assumes no responsibility in connection with or arising from NISTAC’s practice of Ford’s patent rights. That paragraph protects Ford *895 from suit based on a claim arising from the post-transfer development or use of the technology. Paragraph 3.3 then states, using language similar to that in paragraph 3.2, that NISTAC releases Ford from claims based on the practice of Ford’s patent rights. In that context, the meaning of paragraph 3.3 that best accords with the parallel language of paragraph 3.2 is that it protects Ford against any claims by NISTAC arising from NISTAC’s acts of making, using, or selling the technology. Thus, for example, paragraph 3.3 would bar NISTAC from seeking indemnification from Ford in the event that a third party, injured in the course of NISTAC’s use of the donated technology, sued NISTAC on a products liability theory. While that interpretation of paragraph 3.3 may not be the only one, it is at least a reasonable one.
Conspicuous by its absence from the agreement is a provision, simple enough to draft, that would protect Ford against suit for infringement of the donated patents. In fact, what Ford has been required to do to extract such a covenant from paragraph 3.3 is to give that paragraph a 180 degree spin. In a nutshell, Ford argues that a provision that by its terms protects against claims arising from NISTAC’s practice of Ford’s patent rights actually protects against claims arising from Ford’s practice of NISTAC’s patent rights.
The parties knew how to draft a provision granting Ford a license so that Ford would be free to practice the patented inventions without fear of being sued by NISTAC for infringement: Paragraph 2.6 of the donation agreement refers to the “royalty-free and non-transferable license to the Donated Technology with rights to practice the inventions thereof’ that was granted to another party, Visteon Global Technologies, Inc. Yet the parties failed to use similarly direct language in paragraph 3.3, which at least casts doubt on whether that was their intention. Perhaps, as NISTAC alleges, Ford had an eye to claiming a tax deduction for its donation, and therefore wanted to avoid the appearance that it was retaining an interest in the patents, even in the form of a nonexclusive license. But at the very least, the exercise in circumlocution that is necessary to give paragraph 3.3 the meaning that Ford assigns to it makes it reasonable to conclude that the parties intended paragraph 3.3 to be something other than a simple license-back provision.
Because the term “practice of [Ford’s] Patent Rights” is ambiguous, the interpretation of the agreement is a question of fact that, under governing Michigan contract law principles, should not have been disposed of as a matter of law. I would reverse and remand this case so that the agreement can be interpreted by the finder of fact in light of all the available evidence bearing on the parties’ intent.