# STATE OF MICHIGAN

# COURT OF APPEALS

REBECCA POLLOCK,

Plaintiff-Appellee,

v

CHESTERFIELD TOWNSHIP,

Defendant-Appellant.

UNPUBLISHED
October 30, 2014

No. 316950
Macomb Circuit Court
LC No. 2011-004006-CK

Before: FITZGERALD, P.J., and WILDER and OWENS, JJ.

PER CURIAM.

Defendant appeals as of right the circuit court's order requiring defendant to pay health and life insurance benefits to plaintiff. We affirm.

In a preceding case, plaintiff sued defendant, her former employer, for alleged gender discrimination. The parties resolved that case by executing a settlement agreement, which was drafted by defendant. Under the terms of the settlement, plaintiff agreed to release any further claims arising out of her employment with defendant. As an exception to this release, defendant agreed not to impede plaintiff's then-pending application for "duty disability retirement through the Municipal Employment Retirement System" (MERS). Plaintiff's application for duty disability retirement was approved by MERS, and she requested defendant to pay a stipend for health and life insurance. Defendant refused and the instant suit ensued.

The trial court found that the settlement agreement was ambiguous with respect to whether defendant was responsible to pay any benefits to plaintiff. It consequently found that resort to extrinsic evidence was necessary to determine the parties' intent. The trial court found that plaintiff "approached the settlement negotiations with the understanding that plaintiff would be entitled to medical and life insurance benefits if her duty disability retirement was approved by MERS," while defendant "approached the settlement negotiations with the understanding that plaintiff would not be entitled to medical and life insurance benefits under any circumstances, even if plaintiff's duty disability retirement was approved by MERS." Finding that extrinsic evidence did not establish the parties' intent with respect to health and life insurance, the court employed the rule of construction known as contra proferentem. See *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 470-471; 663 NW2d 447 (2003) ("[I]f the language of a contract is ambiguous, and the [fact-finder] remains unable to determine what the parties intended after considering all relevant extrinsic evidence, the [fact-finder] should only then find in favor of the

-1-

nondrafter of the contract pursuant to the rule of contra proferentem."). The court held "that defendant's current opposition to plaintiff's request for health and life insurance benefits constitutes an interference with her application for duty disability benefits."

Defendant argues that the trial court erred in finding that the settlement agreement was ambiguous. We disagree. In general, the interpretation of a settlement agreement, which is construed as a contract, presents a question of law that we review de novo. *MacInnes v MacInnes*, 260 Mich App 280, 283; 677 NW2d 889 (2004). However, "the meaning of an ambiguous contract is a question of fact that must be decided by" the finder of fact. *Klapp*, 468 Mich at 469. We review a trial court's factual findings following a bench trial for clear error. *Ladd v Motor City Plastics Co*, 303 Mich App 83, 92; 842 NW2d 388 (2013). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Chelsea Investment Group LLC v Chelsea*, 288 Mich App 239, 251; 792 NW2d 781 (2010). We "give deference to the trial court's superior ability to judge the credibility of the witnesses who appeared before it." *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 531; 695 NW2d 508 (2004) (internal quotation marks and citation omitted).

"A contract is ambiguous when its words may be reasonably understood in different ways." *Hellebuyck v Farm Bureau Gen Ins Co of Michigan*, 262 Mich App 250, 254; 685 NW2d 684 (2004). A contract may also be latently ambiguous "when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings." *Shay v Aldrich*, 487 Mich 648, 668; 790 NW2d 629 (2010) (internal quotation marks and citations omitted).

The pertinent language of the settlement agreement reads as follows:

> IT IS FURTHER UNDERSTOOD AND AGREED that Plaintiff has applied for duty disability retirement through the Municipal Employees' Retirement System of Michigan (MERS), and that her application is currently pending. Defendant agrees that it will execute whatever documents are necessary to assist and cooperate in Plaintiff's application for retirement benefits through MERS, including specifically waiving the one year tolling provision under MERS Plan Section 24 (1)(a), and providing any other documents necessary to timely file her application and Defendant shall not object to Plaintiff's application for duty disability benefits. Defendant cannot, has not and does not make any representation with respect to Plaintiff's eligibility for disability benefits which is within the discretion of MERS. If Plaintiff is denied disability benefits by MERS, she may pursue appeals with respect to MERS, but will have no recourse against the Township. If Plaintiff's disability benefits are approved by MERS, Defendant will not object to or appeal her entitlement to disability payments under Defendant's MERS Plan. For purposes of MERS' pension benefit, Plaintiff ceased to be paid on January 6, 2006.

With respect to the question at issue, this provision is ambiguous. The ambiguity originates from the meaning of the word "through." The provision provides that plaintiff "applied for duty disability retirement *through*" MERS and that defendant agreed to "cooperate

in Plaintiff's application for retirement benefits *through* MERS." (Emphasis added). Defendant argues that this meant that plaintiff would only be entitled to the monthly benefit paid by MERS if she was approved by MERS for duty disability retirement. Plaintiff argues, however, that it meant that defendant would have to provide health and life insurance, which are duty disability benefits, for plaintiff if she was approved by MERS for duty disability retirement, i.e., MERS serves only as the entity that determines whether plaintiff is entitled duty disability retirement; the responsibility to pay those benefits falls elsewhere. Both interpretations are reasonable. Additionally, *Random House Webster's College Dictionary* (2001) contains 21 definitions for "through," but as used in the settlement agreement, the most apt definition being "by the means of." Both proffered interpretations are consistent with the benefits being provided "by means of" MERS involvement. Given this uncertainty in the meaning of the agreement, the trial court did not err in holding that the settlement agreement is ambiguous.

Defendant also argues that the trial court's interpretation of the contract was erroneous. We disagree. Where a contract is ambiguous, the finder of fact may consider extrinsic evidence to arrive at its proper interpretation. *Klapp*, 468 Mich at 469-470. " '[T]he court can look to such extrinsic evidence as the parties' conduct, the statements of its representatives, and past practice to aid in interpretation.' " *Id*. at 470, quoting *Penzien v Dielectric Prods Engineering Co, Inc*, 374 Mich 444, 449; 132 NW2d 130 (1965). The objective is to discern the intent of the parties. *Id.* at 469-470. However, if extrinsic evidence does not reveal the intent, as a last resort, the ambiguity should "be construed against the drafter of the contract." *Id*. at 470-471. Stated otherwise, "[i]f an ambiguous term exists in the contract, courts should generally construe the term against the contract's drafter, unless the drafter presents persuasive extrinsic evidence that the parties intended a contrary result." *Scott v Farmers Ins Exch*, 266 Mich App 557, 561; 702 NW2d 681 (2005).

Plaintiff's and defendant's attorneys in the gender discrimination case agreed that under ordinary circumstances, when MERS approves a police officer for duty disability retirement, defendant is required to pay for health and life insurance. Frank Klik, a labor rep with the Police Officers Labor Council with defendant, corroborated this assertion. Regarding the settlement agreement in this case, plaintiff's attorney believed that if MERS approved plaintiff for duty disability retirement, she would be entitled to those benefits as if she had been approved under ordinary circumstances. Defendant's attorney testified that his understanding of the agreement was that plaintiff would not be entitled to duty disability benefits from defendant even if she was approved by MERS, and that the agreement was a lump sum settlement. He also testified that the parties discussed health and life insurance and that he made it clear to plaintiff that defendant would not pay such benefits. Plaintiff's attorney testified that defendant's attorney never told her that "duty disability benefits" did not include health and life insurance, and that she and defendant's attorney never discussed health care benefits.

The trial court credited plaintiff's attorney's account where it conflicted with defendant's attorney's account. The trial court also found that the parties "never actually discussed" plaintiff's entitlement to health and life insurance. Deferring to the trial court's superior ability to examine the facts and consider the credibility of the witnesses appearing before it, we are not left with a definite and firm conviction that the trial court's findings were erroneous. And pursuant to those findings, the trial court correctly concluded that the settlement agreement should be interpreted against defendant. The trial court found that extrinsic evidence of the

parties' intent indicated that the parties did not have a common understanding of the benefits that plaintiff would be entitled to if approved by MERS. Instead, they had contradictory understandings. Thus, the extrinsic evidence presented at trial did not readily suggest one interpretation of the disputed language over the other. In this circumstance, the rule of contra proferentem, as a last resort, required the trial court to construe the language against defendant, the undisputed drafter of the settlement agreement. *Klapp*, 468 Mich at 472.

Finally, defendant argues that this suit was barred by the doctrine of res judicata. We disagree. Whether a claim is barred by the doctrine of res judicata is a question of law that we review de novo. *Ditmore v Michalik*, 244 Mich App 569, 574; 625 NW2d 462 (2001).

"Res judicata bars a subsequent action between the same parties when the essential facts or evidence are identical." *Bd of Co Rd Comm'rs for Co of Eaton v Schultz*, 205 Mich App 371, 375; 521 NW2d 847 (1994). For the doctrine to apply, the following elements must be met: "(1) the first action be decided on the merits, (2) the matter contested in the second case was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Id*. at 375-376. Plaintiff does not dispute that elements (1) and (3) have been met, but disputes whether her claim for benefits could have been resolved in the preceding lawsuit. In determining whether the matter contested in the second case could have been resolved in the first, "the determinative question is whether the claims in the instant case arose as part of the same transaction as did the claims in" the preceding case. *Adair v State*, 470 Mich 105, 125; 680 NW2d 386 (2004).

The instant suit was not barred by res judicata. The transaction that gave rise to the preceding case was the alleged gender discrimination. The transaction that gave rise to the present case was the settlement of the gender discrimination suit. While naturally related, they were distinct transactions. Although, as defendant argues, the parties could have resolved whether defendant would be required to provide health and life insurance for plaintiff, that is no longer the issue. Rather, the issue is whether the settlement agreement barred such recovery by plaintiff. In sum, the current dispute arose after and because of the settlement, and consequently could not have been resolved in the preceding lawsuit.

Affirmed.

/s/ E. Thomas Fitzgerald
/s/ Kurtis T. Wilder
/s/ Donald S. Owens

-4-