*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EMPLOYERS MUTUAL CASUALTY
COMPANY,

        Plaintiff/Defendant-Appellant,

v

BOBBY DUVAL, doing business as KOSECKI
CONSTRUCTION, and TYLER KUK,

        Defendants-Appellees,

and

SELECTIVE INSURANCE COMPANY OF
SOUTH CAROLINA,

        Intervening Plaintiff-Appellee.

UNPUBLISHED
May 7, 2019

No. 342940
Bay Circuit Court
LC No. 16-003751-CK

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

        Plaintiff/Defendant Employers Mutual Casualty Company (EMC), appeals by right the trial court's order granting summary disposition in favor of intervening plaintiff, Selective Insurance Company of South Carolina (Selective), and its subsequent entry of a declaratory judgment in favor of Selective.[1] The judgment effectively resolved EMC's claims for

---

[1] EMC filed a complaint seeking a declaratory judgment against defendants and rescission of insurance policies it had issued based on alleged misrepresentations by defendant Bobby Duval. Selective intervened in the action and moved the trial court for leave to file an "intervenor's complaint" for declaratory judgment against EMC. Because Selective's complaint was not designated a counterclaim, EMC was the plaintiff in one action and the defendant in another; the

declaratory relief against defendants Bobby Duval (Duval) d/b/a Kosecki Construction (Kosecki Construction), and Tyler Kuk (Kuk). We affirm in part, reverse in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In February 2016, Kuk fell off a roof and became paralyzed while doing roofing work for Kosecki Construction at a building owned by GLD Management. At that time, EMC had issued workers' compensation and general liability policies to Kosecki Construction. In June 2016, EMC canceled the insurance policies on the basis that Duval had made material misrepresentations in the insurance applications.[2] After Kuk filed a workers' compensation claim, EMC filed a declaratory judgment action, seeking rescission of the policies. Selective, which insured GLD Management, filed an intervenor's complaint for declaratory relief, seeking a declaration that at the time of Kuk's injury, Kosecki Construction was covered by a valid workers' compensation policy issued by EMC, because if the policy was rescinded, Selective would be liable to pay Kuk's workers' compensation benefits.

Following discovery, Selective moved for summary disposition, arguing that EMC had waived its right to rescind the workers' compensation policy because it had instead elected to cancel the policy. EMC also sought summary disposition, arguing that it could still rescind the policies because it discovered some of Duval's misrepresentations after it had determined to cancel the policies. EMC also argued that when Kuk was injured, he was employed by Thomas Kosecki, not Kosecki Construction; further, it argued that the policies it had issued had insured Duval alone, not Kosecki Construction.

The trial court granted Selective's motion for summary disposition and denied EMC's motion for summary disposition on the basis that Kuk was working for Kosecki Construction, Kosecki Construction was jointly operated by Duval and Kosecki, and Duval had sought insurance for the company when she applied for a policy through EMC. The trial court further determined that, while there were questions of fact regarding whether Duval made material misrepresentations, EMC was not entitled to rescind the policy because it had elected the remedy of cancellation rather than rescission. Accordingly, the trial court denied EMC's motion, granted Selective's motion, and declared that EMC was the insurance carrier obligated to defend and pay for Kuk's workers' compensation claims. The trial court denied EMC's motion for reconsideration.

This appeal followed.

---

two actions were, in essence, consolidated by virtue of Selective's intervention, resulting in EMC's unusual designation of "Plaintiff/Defendant."

[2] Duval was Thomas Kosecki's longtime business and romantic partner, and she performed all of Kosecki's clerical work.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." A genuine issue of material fact exists if, when viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 116; 839 NW2d 223 (2013).

We review de novo a trial court's decision in a declaratory judgment action. *Flanders Indus, Inc v Michigan*, 203 Mich App 15, 20; 512 NW2d 328 (1993). We also review de novo issues of contract interpretation, *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012), and whether a contract's language is ambiguous. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

## III. ELECTION OF REMEDIES

EMC argues that the trial court erred by holding that EMC could not rescind the worker's compensation policy. We agree that the trial court erred by concluding that EMC had necessarily waived its right to rescind when it canceled the workers' compensation policy, and conclude that remand is required for the trial court to more specifically consider the alleged misrepresentations and to balance the equities and determine whether, if proven, rescission is the appropriate remedy.

Insurance policies are contracts, and a party may invoke common-law defenses to avoid enforcement of them. *Id*. at 554. A party may be entitled to "a legal or equitable remedy if a contract is obtained as a result of fraud or misrepresentation." *Id*. at 555. "Fraud in the procurement of a contract may be grounds for monetary damages in an action at law or . . . grounds to retroactively avoid contractual obligations through traditional legal and equitable remedies such as cancellation, rescission, or reformation." *Id*. at 557-558 (citations omitted).

An insurer may rescind an insurance policy if there was a material misrepresentation in the application for insurance. *Lash v Allstate Ins Co*, 210 Mich App 98, 103; 532 NW2d 869 (1995). It does not matter whether the misrepresentation was intentional or innocent. *Id*. It also does not matter whether the misrepresentation was discovered before or after the loss. *Burton v Wolverine Mut Ins Co*, 213 Mich App 514, 518; 540 NW2d 480 (1995). However, "[b]ecause a claim to rescind a transaction is equitable in nature, it is not strictly a matter of right but is granted only in the sound discretion of the court." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018), quoting *Amster v Stratton*, 250 Mich 679, 686; 244 NW 201 (1932) (quotation marks omitted). "[C]ourts are not required to rescind in all cases." *Bazzi*, 502 Mich at 410. When two equally innocent parties are affected by fraud in an application, the trial court must balance the equities of the situation to determine which party should assume the loss. *Id*. at 410-411.

Selective relies, as did the trial court, upon *Burton*, in which the defendant insurer chose to cancel an insurance policy after discovering a material misrepresentation, but later sought

rescission. *Id*. at 515-517. After the insurer canceled the policy, but before the effective date of the cancellation, an accident occurred, and the insurer then sought to rescind the policy. This Court concluded that the defendant waived its right of rescission because it had chosen the remedy of cancellation. *Id*. at 517-518. The *Burton* Court essentially held defendant to its decision; having elected, upon discovering a misrepresentation, to cancel the policy at a future date (and therefore to provide insurance until that date, while retaining premiums paid), it could not retroactively make a different choice merely because a claim was made under the policy. *Id*. at 518-519. The *Burton* Court noted that the plaintiffs reasonably believed that they would be covered by insurance until the cancellation date; in fact, the Court noted that even if plaintiffs had obtained a new policy in anticipation of that cancellation, "it is unlikely that either they or their insurance agent would have requested that the coverage become effective" before the cancellation date. *Id*. at 519.[3]

In this case, EMC elected to cancel the workers' compensation policy, rather than rescind it, when it learned of alleged misrepresentations by Duval in applying for the policy. The precise contours of the alleged misrepresentations on which EMC relied in making this election remain, however, unclear. Were it clear that the same alleged misrepresentations formed the basis for EMC's election to cancel and its later effort to rescind, we would likely follow the *Burton* Court's rationale. However, EMC argued before the trial court, and argues on appeal, that it only later became aware of additional grounds for rescission; specifically, EMC contends that it only became aware after discovery that Kosecki Construction's primary business was roofing, and that it sought to rescind the policy based on the additional misrepresentation in the policy application (which misrepresentation was unknown at the time of the cancellation decision) that roofing jobs made up less than 5% of the business. The trial court nonetheless held that EMC had waived its opportunity to elect to rescind the policy by virtue of its earlier decision to cancel.

But *Burton* does not state that an insurer may not respond to *newly discovered* information that it believes supports rescission, merely because it responded to the earlier discovery of a distinct material misrepresentation by electing to cancel (rather than rescind) the policy. Our Supreme Court has stated that an insurer cannot waive its right to seek traditional common-law remedies based on misrepresentations in an insurance application, including rescission, based on facts it does not know, even if it could have "easily ascertained" the misrepresentation. See *Titan Ins Co v Hyten*, 491 Mich 547, 571; 817 NW2d 562 (2012), quoting *Keys v Pace*, 358 Mich 74, 84; 99 NW2d 547 (1959).

We conclude that *Burton* does not necessarily bar EMC from seeking rescission based on the newly-discovered information about the amount of roofing work done by Kosecki Construction, although EMC did waive its right to seek rescission based on the alleged misrepresentations on which the cancellation decision rested. Because the contours of the alleged misrepresentations on which the cancellation and rescission decisions were based have not yet been fleshed out, and because rescission is not automatic, *Bazzi*, 502 Mich at 410, we

---

[3] Such a concern is not present in the instant case, where Kuk's injury occurred before EMC elected to cancel the policy.

conclude that remand is appropriate for the trial court to more specifically consider the alleged misrepresentations and to balance the equities and determine whether, if proven, rescission is the appropriate remedy.

Accordingly, and subject to further proceedings on remand, we hold that the trial court erred by concluding that EMC had necessarily waived its right to rescind the policy, and by granting Selective's motion for summary disposition on that basis. See *Maiden*, 461 Mich at 118.

## IV.  IDENTITY OF KUK'S EMPLOYER

EMC also argues that the trial court should have granted its motion for summary disposition on the basis that EMC contracted solely with Duval, not Kosecki Construction, or because Thomas Kosecki individually employed Kuk at the time of the injury.  We disagree.

An insurance policy is a contract subject to the same principles of contractual interpretation as any other contract. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 714; 706 NW2d 426 (2005).  "The policy application, declarations page of policy, and the policy itself construed together constitute the contract." *Id*. at 715.

Generally, "the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Klapp*, 468 Mich at 469.  "An insurance contract is ambiguous when its provisions are capable of conflicting interpretations." *Id*. at 467 (quotation marks and citation omitted).

Here, the trial court noted that there were conflicting statements in the workers' compensation insurance application, declarations page, and policy concerning the identity of the insured.  On the workers' compensation insurance application, the applicant's name was listed as "Kosecki Construction."  A questionnaire that was part of the application also listed the applicant as "Kosecki Construction."  The policy itself listed "Kosecki Construction, Bobby Duval DBA" as the named insured, but referred to "Kosecki Construction" on the policy declarations, disclosures, and information pages.  A commercial liability insurance obtained at the same time as the workers' compensation policy contained similar ambiguities.

We conclude that the workers' compensation policy was capable of conflicting interpretations.  In this case, the pertinent documents inconsistently identify the named insured. The possible conflicting interpretations of the contract are that (1) the insured was Kosecki Construction (a separate entity from Duval) or (2) the insured was the individual Bobby Duval (doing business as Kosecki Construction).  Because this ambiguity existed, the trial court could consider extrinsic evidence to determine the intent of the parties.  See *Klapp*, 468 Mich at 469; *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010).

We conclude that, when considering the extrinsic evidence, the trial court correctly determined that there was no genuine issue of material fact that the insured was Kosecki Construction.  Duval testified that she contacted EMC intending to obtain insurance for Kosecki Construction.  Duval only employed people through Kosecki Construction and did not need workers' compensation or general liability insurance for any other reason.  Kosecki and Duval

operated Kosecki Construction together, with Kosecki working in the field and Duval working in the office, and they jointly shared the money made by the business. When EMC filed its Notice of Termination of Liability (otherwise known as "Form 401") with the Workers' Compensation Agency, it listed the *business* as Kosecki Construction and the *owner* as Bobby Duval. Finally, when EMC sent a letter cancelling the workers' compensation policy, it addressed the letter to "Kosecki Construction." Other than the reference to "Bobby Duval DBA" on parts of the application and policies, no evidence supports EMC's contention that the policy did not cover Kosecki Construction. Reasonable minds could not differ on this issue, and the trial court correctly denied EMC's motion for summary disposition on this basis. See *Maiden*, 461 Mich at 118.

Additionally, there were no genuine issues of material fact regarding whether Kosecki Construction employed Kuk. EMC argues that the record shows that Kuk worked for Thomas Kosecki, who was hired as an individual contractor by GLD; in essence, EMC argues that Kosecki Construction was not involved in Kuk's employment that led to his injury. We disagree. EMC's May 25, 2016 claims notes noted that Kuk "worked for Kosecki Construction, not DBA Bobby Duval." Additionally, Kuk was paid from the Kosecki Construction bank account, and Kuk's Facebook page indicated that he was a roofer for Kosecki Construction. Further, Kosecki Construction undisputedly worked for GLD. The proposals for work that Kosecki Construction provided to GLD Management were on letterhead reading "KOSECKI CONSTRUCTION." Duval and Kosecki both testified that they ran Kosecki Construction together, and that the business was hired by GLD and employed Kuk. While GLD's regional maintenance supervisor testified that he made the checks for the work payable to "Tom Kosecki," he also testified that Kosecki had not asked him to do so; Kosecki Construction had a separate checking account from Thomas Kosecki or Duval. We conclude that reasonable minds could not differ regarding whether Kuk worked for Kosecki Construction, or whether Kosecki Construction (rather than Kosecki individually) worked for GLD Management.

In sum, the trial court did not err when it held that EMC insured Kosecki Construction and that Kosecki Construction employed Kuk, or by denying EMC's motion for summary disposition on this basis. See *Maiden*, 461 Mich at 118.

## V. COMMERCIAL GENERAL LIABILITY POLICY

EMC also argues that the trial court erred by failing to address the commercial general liability policy in its judgment. We disagree.

A trial court may grant a declaratory judgment to establish the rights and legal relations of an interested party if there is an actual controversy. MCR 2.605(A)(1). However, the trial court may not grant a declaratory judgment unless an actual controversy exists. *Flanders Indus*, 203 Mich App at 20. To show an actual controversy, a plaintiff must plead and prove facts that show that adverse interests exist. *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 55; 620 NW2d 546 (2000). An actual controversy does not exist when the injury is "merely hypothetical." *Id*.

In this case, EMC argues on appeal that if the commercial general liability policy is not rescinded, Kuk may bring a claim against EMC under that policy. However, EMC pleaded to

the contrary by asserting in its complaint that, if the workers' compensation policy was rescinded, "EMC has no duty to provide insurance benefits *of any sort* to any party in the action pending in the Michigan Workers Compensation Agency" (emphasis added) and that the commercial general liability policy did not cover claims of bodily injury. No one has made a claim under the general liability policy or argued before the trial court that the commercial general liability policy provided coverage for Kuk's injury. We conclude that the trial court did not err by failing to issue a declaratory judgment regarding the commercial general liability policy, because any dispute regarding that policy was merely hypothetical. *Citizens for Common Sense in Gov't*, 243 Mich App at 55.

## VI. REQUEST FOR DEFAULT JUDGMENT

EMC also argues that the trial court erred by not granting its request for a default judgment against Duval. We conclude that the trial court erred by failing to address EMC's request, but that the error was harmless.

"[F]ailure to exercise discretion when called on to do so constitutes an abdication and hence an abuse of discretion." *Rieth v Keeler*, 230 Mich App 346, 348; 583 NW2d 552 (1998) (quotation marks and citation omitted). Here, EMC entered a default against Duval on February 14, 2017, after she failed to answer its complaint for declaratory judgment. In its motion for summary disposition, EMC requested that the trial court enter a default judgment against Duval. The trial court did not address EMC's request for a default judgment, and accordingly, it erred.

However, an error is harmless if it is not decisive to the outcome of the case. See *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 529; 730 NW2d 481 (2007). And a matter is moot if this Court's ruling "cannot for any reason have a practical legal effect on the existing controversy." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010).

EMC argues that the trial court should have entered a default judgment against Duval permitting it to rescind the workers' compensation policy and ordering restitution of the attorney fees incurred by EMC in defending against Kuk's workers' compensation claim. However, the trial court on remand will determine, in accordance with this opinion, the merits of EMC's misrepresentation claims, and the appropriate remedy, if any. The trial court also has properly determined that Kosecki Construction, not Duval individually, was EMC's insured. A default judgment against Duval would not have altered this conclusion, and would have had no practical legal effect.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood